**In re Gregory FOY, Connie Foy, Debtors.**

**Paul D. GILBERT, Trustee in Bankruptcy, Plaintiff,**

v.

**Gregory FOY, et al., Defendants.**

**Bankruptcy No. 3–91–05188.
Adv. No. 3–92–0205.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Feb. 1, 1994.

Paul D. Gilbert, Dayton, OH, for plaintiff/Trustee.

Donald F. Harker, III, Dayton, OH, for defendants Gregory and Connie Foy.

Karla K. Sexton, Bethpage, NY, for defendants Trustees of Grumman Inv. Plan and Grumman Corp.

## DECISION ON ORDER GRANTING JUDGMENT TO DEFENDANTS

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court for a decision based upon the uncontroverted facts set forth in the parties' "Pretrial Order" (Doc. # 39) and the parties' memoranda of law. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

### FACTS

1) On November 5, 1991, Gregory Foy and Connie Foy filed a petition in bankruptcy pursuant to chapter 7 of the Bankruptcy Code.

2) At that time Gregory Foy had an interest in the "Employee Investment Plan of Grumman Corporation" (the "Plan"). The value of Mr. Foy's investment in the Plan was approximately $49,000 when the debtors filed their petition in bankruptcy.

3) Gregory Foy's interest in the Plan constituted "Deferred Compensation Contributions" within the meaning of the Plan.

4) The Internal Revenue Service has determined that the Plan is "qualified" under sections 401(k) and 409(a) of the Internal Revenue Code.

The trustee in bankruptcy claims that Mr. Foy's interest in the Plan is an asset of the debtors' bankruptcy estate, while the debtors assert that such interest has never been part of their bankruptcy estate by virtue of an *exclusion* contained in § 541(c)(2) of the Bankruptcy Code.

### CONCLUSIONS OF LAW

The issue before the court is whether Mr. Foy's interest in the "Employee Investment Plan of Grumman Corporation" is excluded from the debtors' bankruptcy estate under 11 U.S.C. § 541(c)(2).

■ As a general rule, upon the commencement of a bankruptcy case "all legal or equitable interests of the debtor in property" become property of the debtor's bankruptcy estate. 11 U.S.C. § 541(a)(1). In conjunction with the sweeping scope of § 541(a)(1), consensual and legal restrictions or conditions placed upon the transfer of a debtor's property are generally invalidated by § 541(c)(1) so "that all the interests of the debtor in property will become property of the estate." H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 83 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. But an explicit exception to the general rule invalidating restrictions or conditions on the transfer of a debtor's interest is found in § 541(c)(2) of the Bankruptcy Code:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title. 11 U.S.C. § 541(c)(2).

The effect of § 541(c)(2) is to exclude certain beneficial interests of a debtor from a debtor's bankruptcy estate.

■ When initially confronted with the question of excludability of a debtor's beneficial interest in a pension plan from a debtor's bankruptcy estate, the Courts of Appeals interpreted § 541(c)(2) in a narrow manner and found that § 541(c)(2) only protected those interests of a debtor constituting traditional spendthrift trusts under applicable state law. *See Daniel v. Security Pacific Nat'l Bank (In re Daniel)*, 771 F.2d 1352 (9th Cir.1985); *Lichstrahl v. Bankers Trust (In re Lichstrahl, )*, 750 F.2d 1488 (11th Cir. 1985); *Samore v. Graham (In re Graham )*, 726 F.2d 1268 (8th Cir.1984); and *Goff v. Taylor (In re Goff )*, 706 F.2d 574 (5th Cir. 1983). Subsequently, this narrow interpretation of § 541(c)(2) was rejected by other Courts of Appeals which found that anti-

alienation provisions of the Employees Retirement Income Security Act ("ERISA") constituted "applicable non-bankruptcy law" under § 541(c)(2). *See Gladwell v. Harline (In re Harline )* 950 F.2d 669 (10th Cir.1991); *Velis v. Kardanis,* 949 F.2d 78 (3rd Cir.1991); *Shumate v. Patterson,* 943 F.2d 362 (4th Cir.1991); *Forbes v. Lucas (In re Lucas )* 924 F.2d 597 (6th Cir.1991).

In 1992, in *Patterson v. Shumate,* —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court resolved the conflict among the Courts of Appeals and held that an anti-alienation provision contained in an ERISA-qualified plan satisfies the literal terms of § 541(c)(2) and therefore "constitutes an enforceable *transfer restriction* for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate." —— U.S. at ——, 112 S.Ct. at 2248 (emphasis supplied).[1] The natural reading of [§ 541(c)(2) ] entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy

law. Nothing in § 541 suggests that the phrase "applicable nonbankruptcy law" refers, as petitioner contends, exclusively to *state* law. The text contains no limitation on "applicable nonbankruptcy law" relating to the source of the law. *Id.,* —— U.S. at ——, 112 S.Ct. at 2246.

Unfortunately, the *Shumate* Court did not provide a definition for the term "ERISA-qualified plan." Following a review of post-*Shumate* cases, this court is persuaded by the rationale set forth in the decision of *In re Hall,* 151 B.R. 412 (Bankr.W.D.Mich. 1993),[2] that a pension plan is "ERISA qualified" if it is:[3]

1) tax qualified under § 401(a) of the Internal Revenue Code,[4]

2) subject to ERISA,[5] and

3) includes an anti-alienation provision.

*In re Hall,* 151 B.R. at 419.

In the instant case, the trustee in bankruptcy concedes that an anti-alienation provision is contained in the Plan (Section 16.04),[6]

---

**1.** "Fundamental to *Shumate's* view is the premise that Congress did not intend for ERISA protection to lapse when a beneficiary filed bankruptcy." Christy & Skeldon, *Pension Benefits in Bankruptcy: Strategies for Debtors and Creditors,* Norton Bankruptcy Law Adviser No. 11 (1993).

**2.** *Hall's* definition of 'ERISA-qualified' is based upon a combined reading of *Shumate* and, of significance to this court, a case from this court's Court of Appeals, *Forbes v. Lucas (In re Lucas ),* 924 F.2d 597 (6th Cir.1991). *Hall* states that "there is a very strong indication that the Sixth Circuit requires an 'ERISA qualified' plan" to comply with the three-pronged test contained in *Hall.* 151 B.R. at 419.

**3.** "Arguably, the *Shumate* Court may have intended any one of three interpretations for the term 'ERISA qualified' plan: (1) a plan subject to ERISA; (2) a plan subject to ERISA which contains an anti-alienation clause; or (3) a plan that is tax qualified under I.R.C. § 401(a), subject to ERISA, and has an anti-alienation provision as required by ERISA § 206(d)(1)." *In re Hall,* 151 B.R. at 418.

**4.** "IRC 401(a), 26 U.S.C. § 401(k), outlines the requirements necessary to establish a qualified trust, i.e., a trust exempted for tax purposes. This section requires plans to include provisions such as:

　(1) Minimum vesting and participation standards;

(2) A requirement that contributions and benefits do not discriminate in favor of highly compensated employees;

(3) Limitations on annual benefits for participants as required by IRC § 415;

(4) A requirement that plan funds be used for the exclusive benefit of employees or their beneficiaries;

(5) Prohibition on the alienation or assignment of plan benefits."

Christy & Skelton, *supra* at n. 1.

**5.** [Pension] plans do not *qualify* under ERISA, at least not in the sense they qualify for special treatment under the IRC. Rather, ... the plan is *subject to ERISA* if the plan [comports with ERISA § 3(2) ].... A plan is *subject to ERISA* solely on the basis of the type of benefits it provides. Beyond that there is nothing under ERISA similar to the multitudinous requirements under the IRC. *Accordingly, employee benefit practitioners refer to "plans subject to ERISA," "plans governed by ERISA," or "ERISA plans," but they do not generally refer to "ERISA qualified" plans.* *In re Hall,* 151 B.R. at 417–418 (*quoting* Christy & Skeldon, *Shumate and Pension Benefits in Bankruptcy,* 2 J.Bankr.L. & Prac. 719, 725 (1992)).

**6.** "SECTION 16.04—Except as required pursuant to a qualified domestic relations order described in Section 414(p) of the Code, or as otherwise provided by law, no right or interest of

but that various other provisions of the Plan [7] "clearly permit distributions that violate the purpose and intent of 29 U.S.C. § 1056(d)(1)." Doc. # 41. The trustee in bankruptcy asserts that:

It should require no citation of authority to establish the proposition that in construing a statute the court should look to the purpose and intent of the words used. Obviously, therefore, in construing 29 U.S.C. § 1056(d) [8] the legislative purpose and intent is not accomplished if a plan document idly recites the language of 29 U.S.C. § 1056(d), but then proceeds in other sections to allow conduct which is clearly contrary to the meaning and purpose of the language used in that statute. Construing all of the language of the plan together, it is apparent that it is possible for an individual to withdraw funds in a manner which was not contemplated by Congress when it enacted 29 U.S.C. § 1056(d). *Id.*

Initially, the court notes that the trustee has offered no authority for the proposition

that the inclusion of sections 2.02, 3.10 or 7.02 in the Plan renders the plan "unqualified" under 26 U.S.C. § 401(a) or causes the Plan not to be subject to the provisions of ERISA.[9] As a result, the court views the trustee's complaint as being solely concerned with the third element of the above definition of "ERISA-qualified," i.e., inclusion of an anti-alienation provision. In fact, because anti-alienation clauses and anti-assignment clauses are relevant to both tax law [10] and ERISA law [11] there is, of course, some overlap among the three prongs of the definition. But since the trustee has alleged no Plan deficiencies other than with respect to the effect of the anti-alienation provision, i.e., there are no alleged deficiencies under either tax law or ERISA law, the court will confine its inquiry to the third element.[12]

*Shumate* clearly states that the types of transfer restrictions contained in the anti-alienation provision of section 16.04 of the Plan are "enforceable" as required by § 541(c)(2). —— U.S. at ——, 112 S.Ct. at

---

any Participant in the Plan, or in his accounts provided thereunder, shall in whole or part (a) be assignable, transferable, or otherwise subject to anticipation, or (b) be subject to pledge, execution, levy, garnishment, attachment, bankruptcy, or any other lien, charge, or encumbrance, and any attempt to assign, transfer, or otherwise anticipate all or any part of such right or interest, or to subject all or any part of any such right or interest to pledge, execution, levy, garnishment, attachment, bankruptcy or any other lien, charge, or encumbrance, shall be void and of no effect." Doc. # 42.

7. The trustee in bankruptcy asserts that sections 2.02, 3.10 and 7.02 of the Plan are "at odds with Section 16.04 in that they permit withdrawals under circumstances that are prohibited by 16.-04" (Doc. # 41).

Section 2.02 permits a Plan participant to terminate participation in the Plan upon 14 days notice. Section 3.10 permits a Plan participant to adjust his contributions at the end of any year in the event the contributions for that year have exceeded the maximum amount permitted to be treated by the participant as deferred compensation. Section 7.02 permits certain distributions in the event of a participant's "financial hardship" as determined by a Plan committee.

8. "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

9. E.g., In *Bernstein v. Greenpoint Savings Bank* (*In re Lane*), 149 B.R. 760, 766 (Bankr.E.D.N.Y.

---

1993), the court stated that "[i]nasmuch as the Debtor is, and always has been, the only participant in the Keogh plans, the plans cannot be subject to the provisions of ERISA. Had the Debtor made contributions to the funds on behalf of at least a single employee, then his plan could potentially be subject to ERISA."

10. 26 U.S.C. § 401(a)(13).

11. 29 U.S.C. § 1056(d).

12. As a result, the court need not presently reach the issue of whether a trustee in bankruptcy has standing to challenge the qualified tax status of a pension plan. Section 7476 of the Internal Revenue Code specifies a limited class of persons who may challenge the tax qualification of a retirement plan:

–the employer
–the plan administrator
–an employee who has qualified under regulations prescribed by the Secretary as an interested party for purposes of pursuing administrative remedies within the the Internal Revenue Service, or
–the Pension Benefit Guaranty Corporation. 26 U.S.C. § 7476(b)(1).
In *dicta*, it has been stated that "[c]reditors do not have standing under the tax code to challenge the tax qualification of a plan." *In re Swift*, 124 B.R. 475, 485 n. 9 (Bankr.W.D.Tex. 1991).

2247. In addition, the Supreme Court is quite clear that it is not disposed to recognize any exceptions to an ERISA anti-alienation provision either outside or within bankruptcy proceedings:

> We previously have declined to recognize any exceptions to ERISA's anti-alienation provision *outside* the bankruptcy context. See *Guidry v. Sheet Metal Workers Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (labor union may not impose constructive trust on pension benefits of union official who breached fiduciary duties and embezzled funds). Declining to recognize any exceptions to that provision *within* the bankruptcy context minimizes the possibility that creditors will engage in strategic manipulation of the bankruptcy laws in order to gain access to otherwise inaccessible funds. See Seiden, Chapter 7 Cases: Do ERISA and the Bankruptcy Code Conflict as to Whether a Debtor's Interest in or Rights Under a Qualified Plan Can be Used to Pay Claims?, 61 Am.Bankr.L.J. 301, 317 (1987) (noting inconsistency if "a creditor could not reach a debtor-participant's plan right or interest in a garnishment or other collection action outside of a bankruptcy case but indirectly could reach the plan right or interest by filing a petition ... to place the debtor in bankruptcy involuntarily"). *Id.* at ——, 112 S.Ct. at 2250.

■ Nevertheless the trustee in bankruptcy maintains that other provisions of the Plan somehow vitiate the effectiveness of the Plan's anti-alienation provision. The problem with the trustee's position is that it concentrates on the debtor's alleged dominion and control over trust assets and ignores the *effectiveness of the restriction placed upon* the *transfer* of those *assets.* Such an analysis would result in a return to the narrow interpretation of § 541(c)(2) espoused by some courts before *Shumate* was decided. One of the items those courts focused on, in deciding whether a plan was a spendthrift trust, was the amount of dominion and control exercised by a debtor over trust proper-

ty. *John Hancock Mutual Life Insurance Co. v. Watson (In re Kincaid),* 917 F.2d 1162, 1167 (9th Cir.1990).[13] Implicit in the trustee's position, then, is the idea that the court should once again examine spendthrift issues (dominion and control) as if *Shumate* had never been decided. As stated by the Court of Appeals in *Shumate:*

> This focus on state spendthrift trust law, which looks to the reality behind the non-alienation provision, is misplaced. ERISA requires a plan to have a non-alienation provision, and that provision has been vigorously enforced. (citations omitted) No more inquiry need be made to determine whether the trust is controlled by the settlor or the beneficiary, or whether they are the same person....
>
> .... [A]ll ERISA-qualified plans, which by definition have a non-alienation provision, constitute "applicable nonbankruptcy law" and contain enforceable restrictions on the transfer of pension interests.... That conclusion *rests not on the reality of the particular beneficiary-settlor-trust relationship in issue, but instead on the status of the plan as ERISA-qualified.* Consequently, Shumate's interest in the pension plan should be excluded from the bankruptcy estate under § 541(c)(2). *Shumate v. Patterson,* 943 F.2d 362, 364–365 (4th Cir.1991).

In the instant case, the ERISA anti-alienation provision is enforceable against the debtor's general creditors and therefore it is enforceable against the trustee in bankruptcy. *Forbes v. Lucas (In re Lucas),* 924 F.2d 597, 603 (6th Cir.1991). Therefore, under § 541(c)(2) of the Bankruptcy Code Mr. Foy's interest in the Plan is not part of the debtors' bankruptcy estate.

For the foregoing reasons, it is hereby ORDERED that judgment be entered in favor of the defendants.

■

**13.** This was so "because implicit in the term 'spendthrift' is the notion that the distribution of the trust is controlled by someone other than the beneficiary of the trust." *In re Kincaid,* 917 F.2d 1162, 1167 n. 3 (9th Cir. 1990).