**In re Gerald G. KELLOGG and Francis M. Kellogg, Debtors.**

**Bankruptcy No. 94–40550.**

United States Bankruptcy Court, D. Massachusetts.

March 27, 1995.

380

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is the "Trustee's Objection to the Debtors' Self–Employment Pension Plan Exemption" (the "Objection") in which the Chapter 7 Trustee in Bankruptcy (the "Trustee") seeks a determination that the simplified employee pension plan owned by the debtor, Gerald G. Kellogg ("Gerald") is (1) not excludable from property of the estate pursuant to 11 U.S.C. § 541(c)(2)[1] and (2) not exempt pursuant to 11 U.S.C. § 522(d)(10)(E).[2]

## I. FACTS

On February 11, 1994, Gerald G. Kellogg and Francis M. Kellogg (the "Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Approximately three weeks later, the Debtors filed a motion requesting an additional thirty (30) days to file their schedule of exemptions. The Court allowed that motion. On March 16, 1994, the Debtors filed Schedule "C" in which they claim "SEP Plan—Putnam Convertible (A08–3–029–32–4493–BBBD) and Putnam Voyager (A07–3–32–4493–BBBB)" (the "SEP Plan") as exempt, pursuant to § 522(d)(10), in the amount of $60,000, the approximate value of the property. Additionally, in a footnote on Schedule "C", the Debtors indicate that "[t]his SEP Plan is being listed for informational purposes only as the Debtors believe that this SEP Plan is not property of their Chapter 7 estate. Further, the Debtors reserve the right to amend this schedule in the future."

Louis S. Robin, for debtors.

David J. Noonan, Trustee in Bankruptcy.

1. Section 541(c)(2) provides:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.
>
> 11 U.S.C. § 541(c)(2).

2. Section 522(d)(10)(E) (before amended in 1994) provides:

> The following property may be exempt under subsection (b)(1) of this section:
> (10) The debtor's right to receive—
> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or con-

tract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the tie the debtor's rights under such plan or contract arose;
> (ii) such payment is on account of age or length of service; and
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).
> 11 U.S.C. § 522(d)(10)(E).

Gerald established the SEP Plan on or about April 8, 1988. The SEP Plan was administered through a Putnam Investments Individual Retirement Account.[3] At all relevant times, Gerald was the employer, sole employee and sole participant under the terms of the SEP Plan. Article XIII of the SEP Plan includes a spendthrift provision as follows:

> To the extent permitted by applicable law, a Participant's beneficial interest in the Plan shall not be assignable, subject to hypothecation, pledge, or lien, nor subject to attachment or receivership, nor shall it pass to any trustee in bankruptcy or be reached or applied by the legal process for the payment of any obligation of the Participant or any Beneficiary thereunder[.]

The SEP Plan also provides, in Article VII, Paragraph 7.9, that "any employer contribution to the IRA Account pursuant to a Simplified Employee Pension Plan may be withdrawn by the Participant at any time." Additionally, Article IX, Paragraph 9.1 provides that:

> [a] Participant may at any time terminate the Plan adopted by the Participant, and an Employer may at any time terminate a Plan adopted by the Employer. Termination may be effected by delivering to the Service Company a written notice of termination addressed to the Trustee and the Service Company and signed by the Participant or the Employer. On termination, if permitted by the terms of the investment, distribution of the IRA Account (reduced by any penalty applicable thereto) shall be made by payment of a lump sum in cash and/or in Investment Company Shares to the Participant.

The Trustee filed his Objection on September 16, 1994. The Debtors filed an opposition thereto and the Trustee responded. The Trustee's Objection was then marked for hearing.

Through his pleadings and arguments presented at the hearing, the Trustee asserts that the SEP Plan is not only property of the estate, but also not properly claimed as exempt under § 522(d)(10)(E). The Trustee asserts that the SEP Plan can not be excluded from property of the estate under the Supreme Court's recent holding in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) because the plan fails to comply with *both* the requirements of the Internal Revenue Code and the Employee Retirement Income Security Act of 1974 ("ERISA"). First, the Trustee asserts that the spendthrift provision is invalidated by the provisions of the SEP Plan which enable the "Participant" to (1) withdraw funds at any time, and (2) terminate the Plan at any time. Second, the Trustee asserts that because Gerald is employer, sole employee and sole participant of the SEP Plan, he can not qualify as an "employee" as the term is defined by ERISA, and in accordance with the decisions of *Kwatcher v. Mass. Serv. Employees Pension Fund,* 879 F.2d 957, 959–61 (1st Cir.1989) and *In re Orkin,* 170 B.R. 751 (Bankr.D.Mass.1994). The Trustee asserts that if the SEP fails to qualify under ERISA, then it "inescapably follows" that it cannot be excluded from his bankruptcy estate under the *Shumate* decision.

The Trustee's second argument challenges the validity of the Debtors' claim of an exemption under § 522(d)(10). First, the Trustee asserts that the Debtors are not entitled to utilize the exemption under § 522(d)(10)(E) because the SEP Plan (1) was established by an "insider" within the meaning of 11 U.S.C. § 101(31)(A)(iv), (2) provides for payment on account of age or length of service, and (3) fails to qualify for preferential tax treatment. *See* 11 U.S.C. § 522(d)(10)(E). Second, assuming that the

---

**3.** The terms of the SEP Plan are governed by "Putnam Master IRA–Plan and Disclosure Statement" attached as *Exhibit "A" to "Chapter 7 Trustee's Response to Debtor's Opposition to the Trustee's Opposition to the Debtors' Claimed Self–Employment Pension Plan Exemption"* (the "Trustee's Response"). Article I (the Introduction) provides:

By executing the related Adoption Agreement, the Participant, or the Employer on behalf of the Participants, has established an Individual Retirement Account Plan for the exclusive benefit of the Participant(s) and his or their Beneficiaries intended to qualify under Section 408(a) or 408(c), in the case of a Plan established by the Employer on behalf of the Participants, of the Code.

exemption can be properly utilized under § 522(d)(10)(E), the Trustee asserts that the amount of the claimed exemption is more than what is "reasonably necessary for the support of the [Debtors]", based on the age, present and future prospects of employment, and health of the Debtors.[4]

The Debtors argue that the SEP Plan is excludable from the bankruptcy estate for essentially two reasons. First, the Debtors argue that the anti-alienation rules, provided under 26 U.S.C. § 401(a)(13) (Internal Revenue Code) and 29 U.S.C. § 1056(d)(1) (ERISA), both apply to the SEP Plan, and, therefore, the SEP Plan's anti-alienation provision is enforceable under ERISA. Second, adhering to the Supreme Court's policy of preventing "a party from receiving a windfall merely by reasons of the happenstance of bankruptcy," *Shumate*, 504 U.S. at 764, 112 S.Ct. at 2249, the Debtors assert that because Massachusetts General Laws, ch. 235, § 34A prohibits the attachment of Simplified Employee Pension Plans ("SEP[s]") and Individual Retirement Accounts ("IRA[s]"), the SEP Plan should receive similar treatment under the Bankruptcy Code.

The Debtors alternatively argue that if the SEP Plan is not excludable from the estate, it may be claimed as exempt under § 522(d)(10)(E), because, in order to be disqualified for such exemption, the SEP Plan must meet all of the exceptions set forth in § 522(d)(10)(E). In this case, the SEP Plan is tax qualified under 26 U.S.C. § 408. Therefore, the Debtors claim that it is not disqualified for exemption under § 522(d)(10)(E). And, assuming that the SEP Plan can qualify for exemption under § 522(d)(10)(E), the Debtors assert that the plan is "reasonably necessary for the support of the Debtors." *See* 11 U.S.C. § 522(d)(10)(E).

In support of their argument that the SEP Plan is reasonably necessary for their support, the Debtors argue that the SEP Plan is not needed for retirement; rather, it will be needed to acquire a new home in the likely event of foreclosure. As a self-employed contractor, Gerald Kellogg claims not to receive a steady income. Frances Kellogg claims to have been diagnosed with borderline diabetes and not to be currently employed. Finally, the Debtors assert they will have to pay substantial personal income taxes. Accordingly, the Debtors argue that the SEP Plan should be properly exempted from the estate pursuant to § 522(d)(10)(E).

After a hearing held on the Trustee's Objection, the Court took under advisement the issue of whether the SEP Plan is excludable from the estate pursuant to 11 U.S.C. § 541(c)(2) and whether it was disqualified from exemption under § 522(d)(10)(E).

## II. DISCUSSION

### A. Background

Until *Shumate*, there was a split among federal circuit courts on the issue of whether a debtor's pension plan interest could be excluded from the bankruptcy estate pursuant to § 541(c)(2).[5] The dispute centered on the correct interpretation of the term "applicable nonbankruptcy law" in § 541(c)(2)— that is, whether or not an anti-alienation provision in ERISA-qualified plan constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law" for the purposes of § 541(c)(2). In *Shumate*, the Supreme Court concluded that the term "applicable nonbankruptcy law" includes federal law as well as state spendthrift law. *Id.* at 756–57, 112 S.Ct. at 2246.

Title I of the Employee Retirement Income Security Act of 1974 (ERISA), codified at 29 U.S.C. §§ 1001–1461, is a federal regulatory scheme enacted to ensure the protection and preservation of private pension plans. *In re Taft*, 171 B.R. 497, 499 (Bankr. E.D.N.Y.1994), *quoting*, Helen Yvette Speilman Sherman, *ERISA Benefits Under the Bankruptcy Code and a New York Debtor's Rights*, 58 Brooklyn L.Rev. 177 (1992). For the purposes of ERISA, a "pension plan" is

---

**4.** The Debtors are both almost fifty (50) years old. Gerald Kellogg is self-employed as a contractor/carpenter. Frances Kellogg has been allegedly diagnosed with "borderline diabetes". They have no minor dependents.

**5.** *See Id.* at 757 n. 1, 112 S.Ct. at 2246 n. 1 (citing split of authority).

generally defined as "any plan, fund or program ... maintained by an employer or employee organization ... that ... provides retirement income to employees or results in a deferral of income by employees for periods extending to the termination of employment or beyond." 29 U.S.C. § 1002(2)(A). Among the requirements imposed under ERISA is an anti-alienation rule which requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

To encourage employers to participate in these plans, Congress coordinated various provisions of the Internal Revenue Code with ERISA to provide favorable tax benefits. *In re Taft*, 171 B.R. at 499, *quoting*, Helen Yvette Speilman Sherman, *ERISA Benefits Under the Bankruptcy Code and a New York Debtor's Rights*, 58 Brooklyn L.Rev. 177. The qualification standards of the Internal Revenue Code also include, among other requirements, an anti-alienation provision which provides that "[a] trust shall not constitute a qualified trust under [the Internal Revenue Code] unless the plan of which such a trust is a part provides that benefits provided under the plan may not be assigned or alienated." 26 U.S.C. § 401(a)(13).

With this dual statutory framework as a necessary background, the facts in the *Shumate* decision should be discussed. On the date of his bankruptcy filing, Joseph Shumate Jr., President and Chairman of the Board of Directors of Coleman Furniture Corporation, held a beneficial interest (valued at approximately $250,000) in the company's pension plan. The pension plan, financed solely by employer contributions, included an anti-alienation provision which satisfied ERISA and the Internal Revenue Code requirements for favorable tax treatment. 504 U.S. at 758–60, 112 S.Ct. at 2247.

Prior to Shumate's bankruptcy filing, Coleman Furniture filed for relief under Chapter 11 of the Bankruptcy Code; the case was subsequently converted to Chapter 7. The trustee of the corporation's estate liquidated the company's pension plan and distributed the full pension interest to all participants except Shumate. The trustee of Shumate's bankruptcy estate attempted to recover Shumate's pension interest for the benefit of Shumate's individual bankruptcy estate by filing an adversary proceeding against the Coleman's trustee in the bankruptcy court. Shumate then petitioned the United States District Court for the Western District of Virginia, which already had jurisdiction over a related proceeding, to compel Coleman's trustee to pay Shumate's interest in the plan directly to Shumate. The district court assumed jurisdiction over and consolidated the bankruptcy court proceeding with the related district court proceeding. The district court then ruled in favor of Coleman's trustee by holding that Shumate's interest did not qualify for exclusion from his bankruptcy estate because ERISA was not "applicable nonbankruptcy law" for the purposes of § 541(c)(2). The Fourth Circuit Court of Appeals reversed the district court, and the Supreme Court granted certiorari.

The Supreme Court held unanimously that an anti-alienation provision in an ERISA-qualified pension plan constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law" for the purposes of § 541(c)(2). *Id.* at 756–60, 112 S.Ct. at 2246–47. In reaching its holding, the Supreme Court determined that the pension plan's anti-alienation provision satisfied the literal terms of § 541(c)(2) because the ERISA provisions contained in 29 U.S.C. § 1056(d)(1) clearly impose a restriction on the transfer of a debtor's beneficial interest in a trust. *Id.* at 758–60, 112 S.Ct. at 2247. The *Shumate* court determined that such a restriction was enforceable under applicable nonbankruptcy law because ERISA (1) compels the trustee or fiduciary of the pension plan to act in accordance with the plan's directives, and (2) creates its own enforcement procedures[6] whereby civil actions could be commenced to

---

6. Section 1132 of Title 29 provides in pertinent part:

  (a) *Persons empowered to bring a civil action.* A civil action may be brought—

    (1) by a participant or beneficiary ...

  (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

    ...

enforce ERISA. *Id.* Finally, the Supreme Court declared that its holding ensured that pension benefits would receive consistent treatment under ERISA, irrespective of whether the beneficiary filed for bankruptcy. *Id.* at 764–65, 112 S.Ct. at 2250.

Since *Shumate,* several courts have interpreted *Shumate's* holding to be limited in its application to "ERISA-qualified" pension plans. *E.g., In re Orkin,* 170 B.R. at 753; *Gilbert v. Foy (In re Foy),* 164 B.R. 595, 597 (Bankr.S.D. Ohio 1994); *First Options of Chicago, Inc. v. Kaplan (In re Kaplan),* 162 B.R. 684, 691 (Bankr.E.D.Pa.1993); *In re Hall,* 151 B.R. 412, 417 (Bankr.W.D.Mich. 1993). In fact there has been much confusion about the meaning of "ERISA-qualified" because the terminology is not defined under ERISA or the Internal Revenue Code. A litany of decisions have opined about what the Supreme Court intended by the term "ERISA-qualified." *E.g. In re Orkin,* 170 B.R. at 753; *In re Foy,* 164 B.R. at 597; *In re Hall,* 151 B.R. at 419; *see also In re Witwer,* 148 B.R. 930, 934 (Bankr.C.D.Cal. 1992), *aff'd,* 163 B.R. 614 (Bankr. 9th Cir. 1994). For example, the court in *In re Hall* outlined a three prong test used to identify ERISA-qualified plans: (1) it must be subject to ERISA; (2) it must be qualified under Section 401(a) of the Internal Revenue Code; and (3) it must contain an anti-alienation provision. 151 B.R. at 419; *accord Hunter v. WSOS Community Action Commission (In re Nolan),* 175 B.R. 214, 217 (Bankr.N.D. Ohio 1994); *In re Foy,* 164 B.R. 595. By applying this judicially created formula, these courts have concluded that if a plan fails to meet any of these three criteria, then the plan's assets are not protected by § 541(c)(2).

The inquiry with respect to SEPs is different from that presented in the foregoing cases.[7] With respect to SEPs, the issue is whether anti-alienation provisions, if included in SEPS, are *enforceable* under ERISA, a precondition to exclusion under § 541(c)(2). The inquiry must, therefore, consist of two parts. Does the SEP contain an anti-alienation provision that is enforceable under ERISA. And, if not, is the restriction enforceable under state or federal law other than ERISA.

## B. Enforceability of the Spendthrift Provision under ERISA

The Trustee argues that the SEP Plan in this case cannot qualify under ERISA because Gerald fails to qualify as an "employee" in accordance with ERISA. Several courts have held that a plan whose sole participant is the owner of the plan sponsor cannot qualify as a plan under ERISA and is, therefore, not excludable from the estate under § 541(c)(2). *See e.g., In re Orkin,* 170 B.R. at 754; *In re Kaplan,* 162 B.R. at 694; *In re Hall,* 151 B.R. at 412; *In re Lane,* 149 B.R. 760 (Bankr.E.D.N.Y.1993); *In re Witwer,* 148 B.R. at 930; *In re Pruner,* 140 B.R. 1 (Bankr.M.D.Fla.1992). *See also Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957.

In the decision of *In re Orkin,* which relied heavily on the First Circuit's decision in *Kwatcher,* Judge Hillman ruled that a debtor, who was employer, sole employee and sole participant under plan could not qualify as an "employee" under ERISA. 170 B.R. at 754. After examining the employee/employer dichotomy under ERISA's statutory provisions[8], regulations[9], legislative history, and

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;
29 U.S.C. § 1132(a).

7. The Court is not required here to make a determination as to whether an "ERISA-qualified" plan must necessarily be qualified under the Internal Revenue Code.

8. Section 1002 includes the following definitions: (5) "employer" is "any person acting directly as employer, or indirectly in the interest of an

employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."
(6) "employee" is "any individual employed by an employer."
(7) "participant" is defined as "any employee or former employee of any employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan[.]"
29 U.S.C. § 1002(5)–(7).

after weighing policy considerations, the *Kwatcher* court determined that a sole shareholder/owner of corporation, who was also an employee of corporation, could not participate as an "employee" in an ERISA plan. 879 F.2d at 963.

The Debtors argue that *Orkin* is distinguishable for two reasons. First, the Debtors assert that the *Orkin* decision held that an "employer" could not claim the benefits of the pension plan; Gerald, however, is arguably seeking to claim the benefits of the plan as an "employee." Second, the Debtors indicate that *Orkin* involved an ERISA plan administered by a labor union, while the plan in this case is a SEP.

The Court is not persuaded by the Debtors' attempt to distinguish the indistinguishable. The *Orkin* decision clearly held that the debtor/sole proprietor who was an employer, sole employee and participant under the pension plan could not qualify as an "employee" under ERISA. 170 B.R. at 754. Moreover, in the *Kwatcher* decision, the appeal was explicitly limited by Kwatcher's contention that he was an "employee" rather than an "employer" under ERISA." 879 F.2d at 958 n. 2. After determining that Kwatcher, as a sole shareholder, was subject to classification as an "employer" under ERISA, the First Circuit held that Kwatcher could not claim the benefits of a qualified plan. *Id.* Therefore, irrespective of whether Gerald is claiming benefits as an "employee" under the plan, he is still subject to classification as an "employer" under ERISA because he is the sole owner and employee of his business. Algebraically, it does not matter what side of an equation one analyzes. By definition, the value is the same.

Finally, the Court rejects the Debtors' argument that *Orkin* is distinguishable because it involved a pension plan administered by a labor union as opposed to a SEP. This distinction is not significant because every "participant" must be an eligible "employee" in order to satisfy ERISA. *See* 29 U.S.C. § 1002(7).

In accordance with the decisions of *Kwatcher* and *Orkin,* the Court finds that Gerald fails to qualify as an "employee" under ERISA. For this reason alone, the Court rules that the SEP Plan is not ERISA-qualified.

Furthermore, the Court rules that SEPs are not excludable from the estate because anti-alienation provisions in SEPs are not *enforceable* under ERISA.

Simplified Employee Pension Plans ("SEPs") [10] were created so that employers who could not bear the administrative responsibilities imposed by the intricate rules governing qualified employee pension plans could still provide pension benefits comparable to those of qualified plans. M.J. Canan, *Qualified Retirement and Other Employee Benefit Plans,* § 4.8 (1994). Unlike a qualified plan, the employer does not maintain a trust arrangement to which it makes contributions. *Id.* Instead, the employer makes contributions pursuant to the terms of a document referred to as a SEP arrangement or plan; the contributions are funnelled to IRAs maintained for the individual employees. *Id.* Although SEPs are easier to establish than qualified pension plans, they are subject to

Section 1103 includes an "anti-inurement" provision:
> The assets of a plan shall never inure to the benefit of an employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

29 U.S.C. § 1103(c)(1).

9. The Department of Labor, pursuant to their authority under 29 U.S.C. § 1135 to promulgate necessary regulations under ERISA, narrowed the definition of "employee benefit plan":
> (a) General. This section clarifies the definition ... of the term "employee benefit plan"
> ...

> (b) Plans without employees. For purposes of Title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan ... under which no employees are participants covered under the plan[.]
> (c) Employees. For purposes of this section:
> (1) an individual and his or her spouse shall not be deemed to be employees with respect to a trade or a business, whether incorporated or unincorporated, which is wholly owned by an individual or by the individual and his or her spouse.

29 C.F.R. § 2510.3–3(a)–(c)(1) (1988).

10. The SEP requirements are primarily contained in 26 U.S.C. § 408(k).

strict participation, nondiscrimination, contribution and withdrawal requirements.[11] One salient feature of a SEP is that an employee must be permitted to make withdrawals from the plan.[12]

A SEP also enjoys the tax benefits provided to qualified pension plans; that is, individuals are not taxed on contributions or earnings until the plan is distributed. *See generally*, Alton C. Ward, *Simplified Employee Pension Plans*, 402 A.L.I. 509 (July 3, 1989). However, there are differences between the tax rules applicable to SEPs and qualified plans. For example, the anti-alienation rule under 26 U.S.C. 401(a)(13) is not a requirement under 26 U.S.C. § 408(k)—that is, the Internal Revenue Code provision governing SEPs.

It is the Debtors' contention that SEPs are governed by the anti-alienation rule contained in § 401(a)(13) of the Internal Revenue Code. In support of this argument, the Debtors rely on language in 26 U.S.C. § 401(d) which provides that:

> Additional requirements for qualification of trusts and plans benefiting owner-employees.—A trust forming part of a pension or profit-sharing plan which provides contributions or benefits for employees some or all of whom are owner-employees shall constitute a qualified trust under this section only if, in addition to meeting the requirements of subsection (a), the following requirements of this subsection are met by the trust and by the plan of which the trust is a part ... [.]

26 U.S.C. § 401(d). The Debtors assert that their SEP Plan meets the requirements set forth in the subsections of § 401(d) and § 401(a), and, therefore, is subject to the anti-alienation requirement of § 401(a)(13). If the SEP Plan is subject to § 401(a)(13)'s anti-alienation requirement, and the SEP Plan's anti-alienation clause is valid under § 401(a)(13), the Debtors argue that the SEP Plan should be excluded from the bankruptcy estate pursuant to § 541(c)(2). However, the Debtors forget that *Shumate* excludes plans containing anti-alienation provisions from the estate if the provisions are *enforceable under ERISA*. A necessary component for ERISA qualification *may* be tax-qualification, but favorable tax treatment does not make the anti-alienation provision enforceable under ERISA unless ERISA itself requires the provision.[13]

ERISA does not require all employee benefit plans which are subject to ERISA to contain a restriction on alienation. Mary Ann Jackson, *Patterson v. Shumate: What Happens to Pension Benefits in Bankruptcy*, 47 Ark.L.Rev. 449, 468 (1994). In order for the anti-alienation requirement to apply, a pension plan must meet the minimum standards of ERISA, Subchapter I. *Id.* at 468–69. However, some pension plans are subject to Subchapter I of ERISA, but are not required to contain the anti-alienation provision imposed by Part 2. *Id.* at 470. The "coverage" and "vesting" provision of ERISA plans, found in 29 U.S.C. § 1051, provides that Part 2 of ERISA (in which §§ 1051 and 1056 are contained and which provide for the necessity of an anti-alienation provision) does not apply to "an individual retirement account or annuity described in section 408 of

---

**11.** Pursuant to § 408(k)(2) and (3), contributions must be made pursuant to a written allocation formula, and they may only be made to an account that satisfies all the requirements for an IRA. *See* 26 U.S.C. § 408(k)(2)–(3).

**12.** Section 408(k) provides:
(4) Withdrawals must be permitted. A simplified employee pension plan meets the requirements of this paragraph only if
(A) employer contributions thereto are not conditioned on the retention in such pension of any portion of the amount contributed, and
(B) there is no prohibition imposed by the employer on withdrawals from the simplified employee pension.

26 U.S.C. § 408(k)(4).

**13.** In several post-*Shumate* decisions, courts struggled to determine whether an "ERISA-qualified" plan must also be a tax qualified plan. *E.g. In re Hall*, 151 B.R. at 418; *In re Foy*, 164 B.R. at 597. In some of these cases, the subject pension plans contained an anti-alienation clause enforceable under ERISA but arguably failed to meet the "tax qualification" requirements under the Internal Revenue Code. This Court is faced with the reverse problem. The SEP Plan is tax qualified; the issue, however, is whether the plan contains an anti-alienation clause that is enforceable under ERISA.

the Internal Revenue Code of 1986[.]" *See* 29 U.S.C. § 1051; *see Shumate*, 504 U.S. at 762–63, 112 S.Ct. at 2249 ("[P]ension plans that qualify for preferential tax treatment under 26 U.S.C. § 408 [individual retirement accounts] are specifically excepted from ERISA's anti-alienation requirement.").

Since they are essentially IRAs funded by employers, SEPs are not subject to the anti-alienation requirement of § 1056(d)(1). *In re Taft*, 171 B.R. at 500. In the instant case, the SEP Plan gratuitously includes an anti-alienation provision. Such an anti-alienation provision would not be enforceable under ERISA.

The Court is persuaded by the reasoning set forth by Bankruptcy Judge Holland in the case of *In re Taft*, 171 B.R. 497. In *Taft*, Judge Holland considered whether a debtor's interest in a SEP was property of the estate under § 541(c)(2). Specifically, the court addressed the issue of whether the SEP's voluntary anti-alienation provision was enforceable under ERISA. 171 B.R. at 501. Acknowledging that ERISA contains its own enforcement provisions which apply to all plans subject to ERISA, the *Taft* court nevertheless concluded that Supreme Court's reasoning in *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1989) necessarily decided the issue. *Id.* at 501–02.

In *Mackey*, a collection agency instituted an action seeking to garnish the debtor/employee's plan benefits in an employee welfare benefit plan after it had obtained money judgments against various plan participants. The Supreme Court had to determine whether the Georgia statute barring garnishment of funds of a plan subject to ERISA was preempted by ERISA. Ruling that the Georgia statute was so preempted, the Supreme Court also held that ERISA does not forbid garnishment of employee welfare benefits as it does for pension accounts. 486 U.S. at 830, 108 S.Ct. at 2185–86. The *Mackey* court explained that:

> [w]here Congress intended in ERISA to . . . extend anti-alienation protections to a particular type of ERISA plan, it did so expressly in the statute. Specifically, [29 U.S.C. § 1056(d)(1) ] bars the alienation or

assignment of benefits provided for by ERISA pension benefit plans. . . . Congress did not enact any similar provision applicable to ERISA welfare benefit plans, such as the one at issue in this case. [29 U.S.C. § 1056(d)(1) ] is doubly instructive. 486 U.S. at 836, 108 S.Ct. at 2189. The *Taft* court submitted that "*Mackey* mandates the conclusion that under ERISA the [SEP's] anti-alienation is not enforceable because Congress, by excluding SEPs from 29 U.S.C. § 1056(d)(1), intended that no protection be applicable to SEPs." 171 B.R. at 502.

The *Taft* court also relied on *Retirement Fund Trust of the Plumbing, v. Franchise Tax Board*, in which the court held that an anti-alienation provision in a "welfare plan", although covered by ERISA, was not enforceable under ERISA. 909 F.2d 1266 (9th Cir.1990). *See also Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 603 n. 9 (6th Cir.1991), *cert. denied*, 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991) (an anti-alienation provision in a welfare benefit plan is not enforceable since the welfare benefit plan can not create a protection excluded by Congress).

This Court adopts the conclusion of *Taft*—that is, a gratuitous anti-alienation provision contained in a SEP is not enforceable under ERISA. In accordance with the teachings of *Shumate*, the restriction on alienation in the SEP Plan being not enforceable under ERISA (that is, applicable nonbankruptcy law), ERISA can not be relied upon to serve as the basis for exclusion under § 541(c)(2).

Before concluding this discussion of ERISA, the Court must address one remaining argument raised by the Debtors. The Debtors assert that excluding the SEP Plan from the bankruptcy estate pursuant to § 541(c)(2) would ensure the uniform treatment of pension plans, irrespective of whether the debtor has filed for relief under Title II. *See Shumate*, 504 U.S. at 762–63, 112 S.Ct. at 2249. The Debtors reference Mass. Gen.Laws Ann. ch. 235, § 34, which protects various retirement vehicles, including SEPs, from attaching creditors under Massachusetts state law.

The Debtors are certainly correct in asserting that SEPs are covered by Mass.Gen.

Laws Ann. ch. 235, § 34A.[14] However, the Debtors' suggestion that the coverage of SEPs under the Massachusetts statute should somehow be dispositive of the issue of excludability under § 541(c)(2) is not convincing. The Debtors are confusing exclusion with exemption. Massachusetts General Laws, ch. 235, § 34A, relating to SEPs, may serve as an exemption of the SEP Plan assets, in whole or in part, notwithstanding the applicability of ERISA. *See In re Printy*, 171 B.R. 448 (Bankr.D.Mass.1994) (ERISA does not preempt portion of ch. 235, § 34A covering IRA accounts). However, the issue of the validity or availability of the state exemptions is not before the Court today as the Debtors have not elected their state exemptions pursuant to 11 U.S.C. § 522(b). The issue before the Court today is exclusion from the estate under § 541(c)(2) and/or the federal exemption under § 522(d)(10)(E).

### C. Enforceability of Spendthrift Provision under State Law

■ The issue of excludability under § 541(c)(2) is not necessarily resolved. Pursuant to § 541(c)(2), a SEP may be validly excluded from the bankruptcy estate if it contains an anti-alienation provision that is enforceable under *other* applicable nonbankruptcy law—that is, state spendthrift law. In some states, the validity of an anti-alienation provision under state spendthrift law is academic because those states do not recognize the validity of a spendthrift trust. *See e.g. Athorne v. Athorne*, 100 N.H. 413, 128 A.2d 910 (1957); *Industrial Nat. Bank v. Budlong*, 106 R.I. 780, 264 A.2d 18 (1970). Generally, a spendthrift trust provides a fund

for the maintenance of its beneficiaries and secures the fund from the beneficiaries and their creditors through an anti-alienation provision. 76 AM.JUR.2D, *Trusts* § 121 (1992). A spendthrift trust, however, may not be established by the settlor for the settlor's own benefit. *Id.* Some jurisdictions consider the following characteristics when determining the validity of spendthrift trusts under state law: (1) whether the trust includes a provision which restricts the beneficiaries' ability to alienate and the beneficiary's creditors' ability to attach the trust corpus; (2) whether the beneficiaries have the power to revoke the trust; (3) whether the beneficiary has exclusive and effective control over the trust corpus, distribution of the trust corpus, and termination of the trust. 76 AM.JUR.2D, *Trusts* § 122. "[W]here a beneficiary exercises control over a retirement plan, as in having the right to direct the investment of the funds or the ability to withdraw his contributions in hardship circumstances, the plan will no longer qualify as a spendthrift trust, and any interest held by the debtor will become part of the bankruptcy estate." *Id., citing, In re Martin*, 119 B.R. 297, 300 (Bankr.M.D.Fla.1990).

In *Shumate*, for example, Shumate's pension plan did not qualify as a spendthrift trust under state law because Shumate, as president and chairman of the board of directors, exercised a great degree of control over the plan. *Creasy v. Coleman Furniture Corp.*, 83 B.R. 404, 408–09 (W.D.Va.1988), *rev'd sub nom., Shumate v. Patterson*, 943 F.2d 362 (4th Cir.1991), *aff'd*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519. Under Virginia law, the state law controlling in *Shu-*

---

**14.** Massachusetts General Laws, ch. 235, § 34A provides:

> The right or interest of any person in an annuity, pension, profit sharing or other retirement plan maintained in accordance with [ERISA], or in any annuity or similar contract purchased with assets distributed from any of the foregoing, or in any plan maintained by an individual as a Keogh Plan, a Simplified Employee Plan, or an Individual Retirement Account shall be exempt from the operation of law relating to insolvency and shall not be attached or taken on execution or other process to satisfy any debt or liability of such person, except as may be necessary to satisfy (i) an order of a court concerning divorce,

separate maintenance or child support under chapters two hundred and eight, two hundred and nine, and two hundred and seventy-three or (ii) in the event of the conviction of such person of a crime, an order of a court requiring him to satisfy a monetary penalty or make restitution to the victim of such crime. The exemption of this section for plans maintained by an individual shall not apply to sums deposited in said plans in excess of seven percent of the total income of such individual within five years of the individual's declaration of bankruptcy or entry of judgment.
Mass.Gen.Laws Ann. ch. 235, § 34A (West Supp. 1994).

*mate,* if a debtor possesses extensive control over the trust, the trust is rendered void. *Id.* at 408. Other courts have similarly concluded that a debtor cannot settle a trust for the debtor's own benefit under state law. *See e.g. In re O'Brien,* 94 B.R. 583 (W.D.Mo. 1988) (pension trust was considered self-settled trust under Missouri law where debtor was sole shareholder of employer corporation sponsoring trust and sole beneficiary under trust); *In re Orkin,* 170 B.R. at 755 (plan did not contain restriction on transfer of beneficial interest under Massachusetts spendthrift law); *In re Herzig,* 167 B.R. 707 (Bankr. D.Mass.1994) (debtor's ability to terminate the trust defeated spendthrift provision under New York law).

■ Massachusetts law recognizes spendthrift trusts. *See Bank of New England v. Strandlund,* 402 Mass. 707, 708, 529 N.E.2d 394, 395 (1988), *citing, Ames v. Clarke,* 106 Mass. 573, 574 (1871). *See also Baker v. Brown,* 146 Mass. 369, 15 N.E. 783 (1888). However, a spendthrift trust remains ineffective against creditors if the settlor creates a trust for the settlor's own benefit and retains the power to amend, revoke or invade the principal of the trust. *See State Street Bank and Trust Co. v. Reiser,* 7 Mass.App.Ct. 633, 635, 389 N.E.2d 768, 770 (1979); *Merchants Nat'l Bank v. Morrissey,* 329 Mass. 601, 605, 109 N.E.2d 821, 823 176–77 (1953).

As indicated by the terms of the SEP Plan in this case, Gerald has the power not only to make withdrawals from the plan, but to terminate the plan and receive proceeds of the IRA account, subject only to a penalty. By controlling the beneficial enjoyment of the trust, Gerald cannot prevent creditors from reaching the trust property. *See Reiser,* 7 Mass.App.Ct. at 635, 389 N.E.2d at 771. "[I]t violates public policy for an individual to have an estate to live on, but not an estate to pay his debts with." *Id., citing, United States v. Ritter,* 558 F.2d 1165, 1167 (4th Cir.1977). *See also In re Orkin,* 170 B.R. at

755 (debtor's power to terminate pension plan and obtain funds defeated invalidated spendthrift provision under Massachusetts law).

Accordingly, under Massachusetts law, the anti-alienation provision contained in the SEP Plan is not enforceable; the SEP Plan, therefore, constitutes property of the estate under § 541(c)(2).

### D. Validity of Debtors' Exemption under Section 522(d)(10)(E)

The Trustee also argues that the Debtors are not entitled to utilize the exemption under § 522(d)(10)(E) because the SEP Plan was (1) established by an "insider" (2) provides for payment on account of age or length of service, and (3) fails to qualify for preferential tax treatment under § 401(a). *See* 11 U.S.C. § 522(d)(10)(E).[15]

■ Bankruptcy Rule 4003(c) provides that "the objecting party has the burden of proving that the exemptions are not properly claimed." Fed.R.Bankr.P. 4003(c). *See, e.g., In re Yee,* 147 B.R. at 625. Accordingly, the Trustee has the burden of introducing sufficient evidence to rebut the prima facie validity of the exemption. *See In re Russell,* 60 B.R. 190, 193 (Bankr.M.D.Fla.1986).

In the instant case, the Trustee must demonstrate that the SEP Plan meets the description of subsections (i), (ii) *and* (iii) of § 522(d)(10)(E). With respect to subsection (iii), the Trustee maintains that the SEP Plan does not conform to the requirements of § 401(a) of the Internal Revenue Code. However, the Trustee's focus is too limited. The subsection is satisfied if the SEP Plan complies with § 408 of the Internal Revenue Code. The Trustee does not demonstrate why § 408 is inapplicable. Accordingly, the Trustee has not satisfied his burden of production under Bankruptcy Rule 4003(c).

---

**15.** The Court notes that the Trustee does not raise the issue of whether the SEP Plan would qualify as a "similar plan or contract" under § 522(d)(10)(E). Although this Court has not previously ruled on the issue, the Court will foreclose the issue by following the other decisions in this District which have found IRAs to be "similar plans or contracts" under § 522(d)(10)(E) and extend those rulings to SEPs. *See In re Link,* 172 B.R. 707 (Bankr. D.Mass.1993); *In re Yee,* 147 B.R. 624 (Bankr. D.Mass.1992); *In re Chiz,* 142 B.R. 592 (Bankr. D.Mass.1992).

The remaining issue of whether the SEP Plan is reasonably necessary for the support of the Debtors pursuant to § 522(d)(10)(E) is a factual one. Accordingly, the Court will hold an evidentiary hearing on this issue.

## III. *CONCLUSION*

In view of the foregoing, the Court hereby sustains the Trustee's objection to the Debtors' claim that the SEP Plan is excluded from the estate pursuant to § 541(c)(2). The Trustee's Objection seeking to disqualify the Debtors from claiming an exemption under § 522(d)(10)(E) is overruled. The Court will schedule an evidentiary hearing on May 2, 1995 at 2 p.m. in Worcester, Courtroom 2, on the issue of whether the SEP Plan is reasonably necessary for the Debtors' support pursuant to § 522(d)(10)(E).

### ORDER

In accordance with the separate Memorandum of Decision issued on March 27, 1995, the Court hereby sustains the "Trustee's Objection to the Debtors' Self–Employment Pension Plan Exemption" (the "Objection") to the Debtors' claim that the SEP Plan is excluded from the estate pursuant to § 541(c)(2). The Trustee's Objection seeking to disqualify the Debtors from claiming an exemption under § 522(d)(10)(E) is overruled. The Court will schedule an evidentiary hearing on May 2, 1995 at 2 p.m. in Worcester, Courtroom 2, on the issue of whether the SEP Plan is reasonably necessary for the Debtors' support pursuant to § 522(d)(10)(E).