The Merchants National Bank of New Bedford & another, trustees, *vs.* William J. Morrissey & others.

Bristol.    October 27, 1952. — January 2, 1953.

Present: Qua, C.J., Ronan, Wilkins, Spalding, & Williams, JJ.

*Trust*, Assignment of beneficiary's interest, Spendthrift trust, Use of principal. *Power*. *Probate Court*, Taking petition for confessed, Equity proceedings, Decree. *Equity Pleading and Practice*, Taking bill for confessed, Decree.

An interlocutory decree taking for confessed a petition in a Probate Court for a declaratory decree merely established the facts and left open the question of the proper final decree on those facts. [603]

Provisions of a trust instrument that the interest of "any beneficiary" should not be "capable of" anticipation, alienation or assignment by him or subject to any process in behalf of creditors did not prevent the settlor of the trust from making a voluntary assignment of a beneficial interest which he had therein. [605]

An assignment by the settlor of a trust of a right to receive income there-
under left the receipt of income by the assignee subject not only to spend-
thrift trust provisions of the trust instrument but also to a right reserved
to the settlor in the trust instrument to alter or revoke it. [606]

Provisions of an instrument of trust clearly showed that a right reserved
to the settlor to receive principal in any amount from the trustees
upon request was to be exercised by him only, and that right was not
transferred to the assignee under an assignment by the settlor of
"all . . . right, title, and interest" in the trust. [606–607]

PETITION, filed in the Probate Court for the county of
Bristol on November 30, 1951.

The case was heard by *Fuller*, J.

*Charles A. Adams*, guardian ad litem, pro se.

*Joseph F. Francis*, for William J. Morrissey.

*George P. Ponte*, for John David Morrissey.

*Raymond McK. Mitchell*, guardian ad litem, pro se.

WILKINS, J. This petition for a declaratory decree is by
the trustees under a trust instrument executed by the re-
spondent William J. Morrissey. The controversy arises out
of an assignment signed by him on October 27, 1948, which
reads: "In consideration of one dollar and other considera-
tion, I, William J. Morrissey of Fairhaven, Massachusetts,
County of Bristol, hereby assign all my right, title, and
interest in the Trust Instrument, dated December 21, 1940,
in which I am named Trustor and in which the Merchants
National Bank of New Bedford and Francis A. Considine of
said New Bedford are named as Trustees; and I hereby do
transfer all my right, title, and interest in the trust property
of said instrument, namely: Policy No. 820,323 Phœnix-
Mutual Life Insurance Company of Hartford, Conn., Or-
dinary Life in the amount of $100,000.00; beneficiary The
Merchants National Bank of New Bedford, Mass., and
Francis A. Considine, as Trustees under the provisions of a
trust agreement made December 21, 1940: to John David
Morrissey of said Fairhaven, Son of said William J. Morris-
sey." The assignment was sworn before a notary public.
The reason for the assignment does not appear.

The policy was on the life of Grace L. Morrissey, who died
on June 10, 1951, and the proceeds have been paid to the

trustees, who now hold them. The questions for consideration, which are as to who has the right to the income and as to who has the right to request payments of principal, are the same as though the trust property had originally consisted of cash.

The petition was taken pro confesso against the settlor and certain other respondents for failure to appear and answer. This action was not the same as a decree on the merits, but merely established the facts. There still remained the entry of the proper decree. *Russell* v. *Lathrop,* 122 Mass. 300, 302–303. *Mayor of Cambridge* v. *Dean,* 300 Mass. 174, 175. *Matek* v. *Matek,* 318 Mass. 677, 679. The respondents who answered admitted all the facts now material, and raised only questions of law on the allegations of the petition. Accordingly, all the respondents are on the same footing as to the issues before us.

The trust instrument contained the following provisions as to income and principal: "4. The trustees after paying or making proper reserve for the expenses of this trust . . . shall pay over the entire net income from the trust estate to the trustor in such installments as he may from time to time designate. If at any time during the continuance of this trust the income from the said trust estate shall not be sufficient in the judgment of the trustees for his maintenance, support, comfort and benefit in the manner that he has heretofore been accustomed or if for any other reasons the trustees may deem such action advisable, they may use and apply all or any portion of the principal of the trust estate, even to its exhaustion, for the maintenance, support, comfort and benefit of the trustor as aforesaid." "5. The trustees shall at any time and from time to time during the duration of this trust pay over to the trustor upon receipt of a request therefor in writing signed by him (which signature shall be guaranteed by a national banking association if not made in the presence of any officer or representative of the trustees) any part or the whole of the principal of the said trust estate even to its exhaustion." Under paragraph 6, upon the death of the settlor, the income was to be used for

the benefit of or paid to John David, and the principal, in the discretion of the trustees, could be paid to him at various times between the ages of twenty-eight and forty.[1]

There was a spendthrift trust provision in paragraph 17.[2] Paragraph 24 contained the following: "The trustor reserves the right to himself at any time during his lifetime to alter, amend, revoke or terminate this agreement in whole or in part by giving written notice of such alteration, amendment, revocation or termination to the trustees signed by him and delivered to them (which signature if not made in the presence of an officer or representative of the trustees shall be guaranteed by a national banking association) . . . ."

The respondent John David Morrissey contends that he is entitled (1) to receive the net income and to designate the instalments in which it shall be payable; (2) to receive a payment of $5,000 from principal which he has requested; and (3) to receive further payments from principal, so long as both he and the settlor are living, even to the exhaustion of the fund. The settlor contends that the assignment to John David was void because of the spendthrift trust provision, or, in the alternative, that it is good only until revocation by the settlor under paragraph 24. The guardians ad litem concur in the latter contention of the settlor, and further argue that the assignment at most transferred only the right to receive income, and could have no effect upon principal.

---

[1] The age of John David Morrissey does not appear.

[2] "17. The interest of any beneficiary hereunder, either as to principal or income, shall not be capable of being anticipated, alienated, or in other manner assigned or anticipated by assignment by such beneficiary and shall not be subject to any legal or equitable process, bankruptcy or insolvency proceedings, or the interference or control of creditors. In the event that at any time any beneficiary hereunder shall become in the opinion of the trustees so heavily indebted that the payment of any income or principal the trustees would be required to make to such beneficiary will inure principally to the benefit of his creditors, the trustees may retain in their hands as principal whatever sum would otherwise have been payable to such beneficiary and may use such part or the whole of said sum and the income therefrom as they may deem advisable for the comfort, maintenance and support of such beneficiary during his lifetime, and to pay to such beneficiary from time to time such part or the whole of the principal and income to which such beneficiary would otherwise have been entitled as the trustee may from time to time deem advisable."

The final decree provided (1) that subject to paragraph 17 and so long as the settlor and John David Morrissey are both living (a) the net income should be paid to John David and (b) John David has the exclusive right to designate from time to time after accrual of net income in what instalments it is to pass to him; (2) that John David is not entitled to receive from principal the sum of $5,000 requested by him; and (3) that during the lifetime of the settlor the trustees are not under a duty to pay to John David any part of the principal upon his request. Both the settlor and John David appealed.

1. The provision against alienation in paragraph 17 did not render the settlor incapable of making a voluntary assignment to John David. The established policy of this Commonwealth long has been that a settlor cannot place property in trust for his own benefit and keep it beyond the reach of creditors. *Pacific National Bank* v. *Windram*, 133 Mass. 175. *Jackson* v. *Von Zedlitz*, 136 Mass. 342. *Taylor* v. *Buttrick*, 165 Mass. 547, 551. *Forbes* v. *Snow*, 245 Mass. 85, 89. Our cases draw no distinction between voluntary and involuntary alienation, and their language is broad enough to cover both.

The underlying principle applicable to voluntary alienation, however, is different. It is that a settlor who is of full legal capacity should not be held by establishing a spendthrift trust in his own favor to have forever deprived himself of the power to transfer the trust property. This is the view of the Restatement: Trusts, § 156, comment e. "If a person attempts to create a spendthrift trust for his own benefit, he may voluntarily transfer his interest although the terms of the trust contain an express restraint against his voluntary alienation." Such is the weight of authority as well. *Byrnes* v. *Commissioner of Internal Revenue*, 110 Fed. (2d) 294, 295 (C. C. A. 3). *City Bank Farmers Trust Co.* v. *Kennard*, 1 N. Y. Sup. (2d) 369, 371. *Rose* v. *Third National Bank*, 27 Tenn. App. 553, 568–569. American Law of Property, § 26.122. Griswold, Spendthrift Trusts (2d ed.) §§ 493, 494. Scott, Trusts, § 156. Contra, *Hackley* v. *Littell*, 150

Mich. 106, 117. And see *Booth* v. *Chadwick*, 154 S. W. (2d) 268, 274 (Tex. Civ. App.).

2. The assignment was effective to transfer the settlor's right to receive income. *First National Bank* v. *Massachusetts Loan & Trust Co.* 123 Mass. 330, 331. *Baker* v. *Davie*, 211 Mass. 429, 439. That right, however, is subject to the right of amendment or revocation reserved in paragraph 24. The assignment did not purport to be action taken under paragraph 24. *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 462. Restatement: Trusts, §§ 330, comment j, 331, comment d. Scott, Trusts, §§ 330.8, 331. And as a matter of interpretation, it was not. Accordingly, the decree should be modified by making the receipt of income subject to the provisions of paragraph 24 as well as of paragraph 17.

3. The decree was correct in declaring that the assignment carries no right to receive principal. The general rule is that there can be no assignment of a power which is created by words clearly indicating that the donor intended that the power be exercised only by the selected donee. *Mooers* v. *Greene*, 274 Mass. 243, 252. *Boston Safe Deposit & Trust Co.* v. *Prindle*, 290 Mass. 577, 582. *Daley* v. *Daley*, 308 Mass. 293, 309. Paragraph 5 plainly requires that payments of principal shall be made only on a request in writing by the "trustor" and that the signature shall be guaranteed by a national bank if not made in the presence of an officer or representative of the trustees. The "trustor," as defined in the preamble, means William J. Morrissey. No one else could meet this requirement.

This result is in symmetry with other parts of the trust instrument. In addition to the reserved life interest and power to consume principal, the settlor retained the right to examine securities and accounts (paragraph 14), to advise on trust investments (paragraphs 14 and 15), to remove trustees (paragraph 20), and to alter, amend, revoke, or terminate the trust (paragraph 24). It is provided that at the settlor's death "what remains of the trust estate" shall be held for the benefit of John David, with payments of principal in the sole discretion of the trustees guided by

carefully prescribed conditions (paragraph 6). There are alternative provisions for the disposition of the trust property should John David predecease the settlor leaving a widow or children surviving (paragraphs 7, 9, and 10), or leaving no widow or children surviving (paragraph 11); or die after the settlor leaving a widow or children surviving (paragraphs 8, 9, and 10), or leaving no widow or children surviving (paragraph 12). The entire scheme is the preservation of the trust property pending its gradual distribution to the named beneficiaries. While the settlor might wipe out the trust by a single request for principal, it would be inconsistent with many provisions of the trust instrument that anyone else should have this power.

4. The final decree is to be modified by inserting in numbered paragraphs 1 and 2 after "Subject to the provisions of paragraph 17" the words "and of paragraph 24," and, as so modified, it is to be affirmed. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*