**In re James R. ROSENCRANZ, Debtor.**

**Bankruptcy No. 95–12834–WCH.**

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

March 21, 1996.

Jillian K. Aylward, Jillian K. Aylward & Associates, Boston, MA, for debtor.

John T. McParland, Randolph, MA, pro se.

### DECISION REGARDING OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. Procedural Background

James R. Rosencranz (the "Debtor"), an attorney who has practiced law for fifteen years, filed for relief under Chapter 13 of the United States Bankruptcy Code (the "Code") on April 25, 1995. On May 31, 1995, the Debtor filed his Schedules, Statement of Financial Affairs and his Chapter 13 Plan (the "Plan"). John T. McParland (the "Creditor"), filed an objection to the Plan on August 7, 1995. The Debtor amended Schedules I and J to reflect gross income, deductions and expenses on August 11, 1995.

On October 2, 1995, I held a hearing on the confirmation of the Plan and the objection of the Creditor. I ordered the Debtor to file an amended plan. Subsequently, the Debtor filed a motion to amend his plan and to amend his Schedules and Statement of Financial Affairs to address his outstanding taxes. The Creditor filed an objection to the confirmation of the plan as amended (the "Amended Plan"). I held an evidentiary hearing on the Creditor's objection and took the matter under advisement.

1. The Debtor's obligation to the Creditor arises from a state court judgment.

2. The Debtor stated, "It's in a trust, ah—which I share with my mother my brother and myself."

### II. Arguments

#### A. The Creditor

The Creditor alleges that the Debtor has understated the value or omitted assets from his Schedules and has overstated his expenses. As a result, the Creditor argues that the Debtor did not file the Amended Plan in good faith, the Amended Plan is unconfirmable and the case should be dismissed. At the evidentiary hearing, the Creditor entered into evidence several documents to support his contention.

The first exhibit contains transcripts from a Supplementary Process hearing that took place in Quincy District Court on April 11, 1995 and April 25, 1995.[1] During that hearing, the Debtor testified that his home was held in a trust in which the Debtor shared a beneficial interest with his mother and his brother.[2] The Debtor testified that he did not remember if he were the settlor of the trust that owned the house. He admitted that he was the sole trustee of the trust. The Debtor testified that the property was unencumbered.

The Debtor further testified that he did not own a car and that his life insurance did not have a cash surrender value. He stated that his Individual Retirement Accounts (the "IRA's") were worth approximately $3,000. He was vague about any account receivables.

At the end of the testimony, the judge found that the Debtor's testimony was not credible and sentenced the Debtor to the House of Corrections until he purged his willful failure to pay the debt. Judge Minehan stayed her order upon the representations of Debtor's counsel that an arrangement for payment would be made. At the next hearing, the court suspended the proceedings upon learning that the Debtor had filed for bankruptcy.

After the transcript, the Creditor introduced into evidence the Declaration of the Rosencranz Trust (the "Trust"). The document reflects that the Debtor is the settlor of

Tr. p. 5. I take that testimony to mean that the Debtor has a one-third beneficial interest in the trust which owns the Debtor's home.

the Trust and the sole trustee. The purpose of the Trust is to hold property located at 45 Meetinghouse Lane in Milton (the "Property").

The Creditor then submitted a document that established that the cash value of the Debtor's insurance is $3,100. The Debtor stipulated to this value.

The Creditor submitted a mortgage from Richard Barker to the Debtor in the amount of $25,800 (the "Barker Mortgage"). The Creditor introduced an additional mortgage that purports to indicate that a portion of a $40,000 mortgage was given to the Debtor (the "Caristia Mortgage").

The Creditor began to introduce evidence regarding a motor vehicle when the Debtor interrupted and agreed that he has a beneficial interest in the vehicle and that it can be included as an asset. The Creditor also contended at the hearing that the Debtor's schedule of expenses is incorrect because, among other things, he does not have an employee to whom he must pay a salary although he listed payroll taxes as an expense.

### B. The Debtor

The Debtor stated, through counsel, that the Trust was created in 1979 and that the Debtor's mother was the settlor of the Trust. The Debtor further stated that the Debtor became the trustee of the Trust and a one-third beneficiary in 1981. The Debtor claimed that the Trust is a spendthrift trust and that he does not treat the property as his own.

With respect to the cash surrender value of the life insurance, the Debtor states that it was an error that he did not include it in his Schedules. Further, the Debtor states that there is no harm because the Debtor is entitled to an exemption in the asset.

The Debtor contends that the Barker Mortgage was listed in the Schedules and it is an asset which will be valued by the Chapter 13 trustee.[3] The Debtor also stated that the Caristia Mortgage had been discharged but did not offer any evidence to verify the same. The Debtor argued that there was no harm in his omission of the car from the Schedules. The Debtor claimed that there were no intentional errors with respect to the expenses and that the Debtor had endeavored to submit an average of the amounts.

### III. Analysis

■ The first issue for me to decide is whether the Debtor either omitted assets that should have been included in his Schedules or if he undervalued the assets that were included.

■ From the documents provided, I find the Debtor's mother established a trust in 1979 (the "Mother's Trust").[4] The beneficiaries of that trust were Marion Gannon and Emanuel Boogusch. Unless terminated by the trustee and a majority of the beneficiaries, the Mother's Trust was to terminate ten years after the death of the last survivor of the beneficiaries. Also in 1979, Marion Gannon and Emanuel Boogusch transferred the Property to the Mother's Trust.

In 1981, the Debtor created the Trust. It provides, *inter alia,* as follows:

2. *Beneficiaries.* The original and ultimate beneficiaries of this Trust are the persons listed as beneficiaries in the Schedule of Beneficiaries this day executed by them and the Trustee, and filed with the Trustee . . .

3. *Trust Estate for the Benefit of the Beneficiaries.* The Trustee shall hold the property conveyed to him as Trustee . . . and shall make all distributions pursuant to the directions of the beneficiaries.

Subject to the consent of the beneficiaries, the Trustee shall have full power and authority to deal with all property conveyed to him as Trustee hereunder.

4. *Powers of the Trustee.* Except as otherwise herein provided, the Trustee shall have no power to deal in or with the trust estate, except as consented to or directed by the beneficiaries. When, as, if,

---

3. In a earlier proceeding, I order the Chapter 13 trustee to review the account receivables which the Debtor listed in his petition.

4. The Debtor introduced into evidence the declaration of the Mother's Trust.

and to the extent directed by the beneficiaries ... the Trustee shall have full power and authority: ...

5. *Term of Trust: Termination.* The Trust may be terminated at any time by the beneficiaries by notice in writing to the Trustee; and the trust shall terminate in any event twenty (20) years after the death of the last to die of the beneficiaries hereunder.

7. *Amendment of Declaration of Trust.* This Declaration of Trust may be amended from time to time by an instrument in writing signed by the then Trustee hereunder and the beneficiaries and acknowledged by one or more of such Trustees or beneficiaries, provided, in each case, that the instrument of amendment, or a certificate by any Trustee, setting forth the terms of such amendment, shall be signed, acknowledged and recorded and/or filed (if applicable) with the Registry ...

10. *Third Party Rights Against Trust Estate Only* ... No beneficiary of any interest or right hereunder, whether for income or ·principal, or otherwise, shall have the power to anticipate, alienate, dispose of or encumber such interest, or to subject the same to his debts, obligations or liabilities. The interest of any such person shall not be liable for his debts, obligations or liabilities or subject to attachment by, or to the interference or control of, any creditor, assignee, transferee or the like of any such person or to be taken or reached by any legal or equitable process in satisfaction of any debt obligation or liability of any such person. The Trustee shall not be required to take any action or to make any disbursements whatsoever hereunder to or for the benefit of any creditor, assignee, transferee, or the like of any such person.

On February 19, 1981, Emanuel Boogusch transferred the Property to the Trust. No evidence was presented on how the Mother's Trust terminated or how the Property was transferred from the Mother's Trust to Emanuel Boogusch.

■ The Debtor listed the Trust in his Schedules as a real estate spendthrift trust and listed his interest therein as having no value. A spendthrift trust is a trust that "provides for the maintenance of its beneficiaries and secures the fund from the beneficiaries and their creditors through an anti-alienation provision." *In re Kellogg,* 179 B.R. 379, 388 (Bankr.D.Mass.1995). Massachusetts law recognizes spendthrift trusts. *Id.* at 389.

■ There are two reasons why the Trust cannot be considered a spendthrift trust with respect to the Debtor's interest in the Trust. First, I do not believe the Trust is a spendthrift trust. If the purpose of a spendthrift trust is to give the beneficiary the benefit of the trust *res* and nothing more, a trust for the benefit of a beneficiary who has control over the *res* cannot be considered spendthrift. The terms of the Trust confer upon the beneficiaries complete control over the terms and *res* of the Trust. As such, the Trust cannot be considered spendthrift.

■ Even if the Trust were considered spendthrift, there is a second problem with the Debtor's argument. It has long been the rule in Massachusetts that when a settlor creates a trust for the settlor's own benefit and reserves the ability to amend, revoke or invade the principal of the trust, the settlor's interest in the trust can be reached by the settlor's creditors. *See Markham v. Fay,* 74 F.3d 1347 (1st Cir.1996); *Ware v. Gulda,* 331 Mass. 68, 70, 117 N.E.2d 137, 138 (1954); *Merchants Nat'l Bank v. Morrissey,* 329 Mass. 601, 605, 109 N.E.2d 821, 823 (1953); and *State Street Bank and Trust Co. v. Reiser,* 7 Mass.App.Ct. 633, 635, 389 N.E.2d 768, 770 (1979).

Despite the Debtor's claim that the Property is held in the Mother's Trust or that the Trust is actually a continuation of the Mother's Trust,[5] the evidence demonstrates that

---

**5.** The Debtor did not offer any evidence with respect to these contentions. Based upon the evidence I received, I must conclude that the Trust holds title to the Property. Furthermore, although I received the declaration of the Mother's Trust, I was given no explanation as to why the Mother's Trust did not transfer the Property to the Trust but rather an individual accomplished the transfer. In any event, the Debtor

the Debtor is the settlor of the Trust, the Trustee of the Trust and a one third beneficiary with his mother and his brother both of with whom he resides. I conclude that even if the Trust were considered a spendthrift trust, under Massachusetts law, the Debtor's one third interest in the Trust can be reached by Debtor's creditors.

■ If the Trust is not a spendthrift trust, it could be considered a nominee trust. A nominee trust is one where the trustee is the agent of the beneficiaries. *Apahouser Lock & Security Corp. v. Carvelli*, 26 Mass. App.Ct. 385, 388, 528 N.E.2d 133 (1988). The following are features of a nominee trust:

> (1) the names of the beneficiaries are filed with the trustees rather than being publicly disclosed; (2) a trustee may serve simultaneously as a beneficiary; (3) the trustees lack power to deal with the trust property except as directed by the beneficiaries; (4) a third party may rely on the disposition of trust property pursuant to any instrument signed by the trustee, without having to inquire as to whether the terms of the trust have been complied with; and (5) the beneficiaries may terminate the trust at any time, thereby receiving legal title to the trust property as tenants in common in proportion to their beneficial interest ... The third listed feature is the key to the nominee nature of the trust.

*In re Grand Jury Subpoena*, 973 F.2d 45, 48 (1st Cir.1992).

A nominee trust is "a common device for holding title to real estate in Massachusetts" *Apahouser Lock & Security Corp. v. Carvelli*, 26 Mass.App.Ct. 385, 388, 528 N.E.2d 133 (1988). A nominee trust is also a vehicle for hiding the identities of the beneficiaries. *Morrison v. Lennett*, 415 Mass. 857, 860, 616 N.E.2d 92, 93 (1993).

■ The declaration of the Trust provides that the names of the beneficiaries are filed

with the trustee; the trustee may serve simultaneously as a beneficiary; the trustee can manage the Property only as directed by the beneficiaries; a third party may rely on the disposition of the Property pursuant to any instrument signed by the Trustee; and the beneficiaries may terminate the Trust at any time. Based upon the definition of nominee trust and the provisions of the Trust, I conclude that, but for the spendthrift language, the Trust would be considered a nominee trust.[6] If the Trust were a nominee trust, the question becomes what interest does the Debtor have in the Trust.

Under case law, beneficiaries have received a variety of treatment. Massachusetts courts have held that "the beneficiaries of a nominee trust are considered the true owners of the trust property for the purpose of liability as well as benefit." *Cerny v. Fineburg*, 1993 WL 818652 *2 (Mass.Super.1993). *See also Morrison v. Lennett*, 415 Mass. 857, 862, 616 N.E.2d 92, 95 (1993) (beneficiary regarded as true owner where statutory limitation on damages protects beneficiary); *Federal Deposit Insurance Corp. v. Porter*, 1 Mass.L.Rptr. 566 (Mass.Super.1994) (beneficiaries of nominee trust personally liable for trust obligations).

In *In re Eastmare Development*, 150 B.R. 495 (Bankr.D.Mass.1993), Judge Feeney discussed whether the debtor's 100% beneficial interest in a nominee trust was property of the estate. For assistance she looked to the case of *In re Medallion Realty Trust*, 120 B.R. 245 (D.Mass.1990) which, she stated, noted that "Massachusetts cases permit creditors to pierce the 'trust veil' to obtain recoveries against beneficiaries/partners in recognition of the fact that the beneficiaries maintain ultimate control over the affairs of the trust. In these situations, courts have not permitted the trust vehicle to shield the beneficiaries from liability." *Id.* at 500. Judge Feeney ruled that "the [d]ebtor in the instant case is the real party in interest as it

---

did not clarify why this would have affected the outcome of this decision.

**6.** The purpose of a spendthrift trust is to provide the beneficiary of the benefit of the trust assets without giving the beneficiary control over the same. The purpose of a nominee trust is to give

the beneficiary control over the *res* of the trust without revealing the identity of the beneficiary. Because a spendthrift trust is antithetical to a nominee trust, I find no grounds upon which I classify the Trust as being a spendthrift nominee trust.

had control over the affairs of the [t]rust." Judge Feeney held that "for the purposes of section 541 of the Bankruptcy Code, the Debtor's estate includes equitable ownership of the nominee trust res." *Id.* at 503.

In *Medallion,* Judge Mazzone considered whether a trust was a business trust or whether it was a partnership. The court reviewed several cases from the Supreme Judicial Court regarding "whether a business association was a trust or a partnership." *In re Medallion Realty Trust,* 120 B.R. 245, 247–248 (D.Mass.1990). After his review, Judge Mazzone decided that "the primary lesson that emerges from these cases is that the more power the beneficial interest have and exercise over the affairs of a business association, the more likely it is that association is a partnership, particularly, although not exclusively, when the plaintiff is a third party such as a creditor or tax collector." *Id.* at 248.

In *In re Medallion Realty Trust,* 103 B.R. 8 (Bankr.D.Mass.1989), Judge Queenan addressed the case of two individuals who were both the trustees and beneficiaries of a nominee trust. He stated that the individuals "own the property and operate the business as co-tenants, co-venturers or partners. If they are only co-tenants, their personal liability to a particular creditor depends upon application of principles of contract and agency law to the specific facts." 108 B.R. at 12.

Unfortunately, the facts of this case do not fall squarely within the holdings of the aforementioned cases. I conclude that even if none of these cases were applicable and the Debtor's interest in the Trust could not be reached either outright or based upon partnership law,[7] to the extent that the Trust is a nominee trust the Debtor holds at least a one-third beneficial interest. *See In re Simon,* 179 B.R. 1, 5 (Bankr.D.Mass.1995). I also conclude that because the asset of the Trust is an unencumbered house, the value of

the Debtor's interest in the Trust must be worth more than zero.

In addition to the interest in the Trust, the Creditor established that the Debtor has an interest in a life insurance policy which he failed to acknowledge until pressed to do so. The Creditor established and the Debtor agreed that the Debtor has an interest in a motor vehicle which he did not list. The Creditor offered two mortgages held by the Debtor which the Debtor did not list in his petition.[8] The Debtor did not offer evidence to refute the existence of these mortgages.

Having concluded that the Debtor did either omitted or undervalued assets, I turn to the issue of whether the Amended Plan can be confirmed notwithstanding the Debtor's actions.[9] 11 U.S.C. § 1325 governs confirmation of the Amended Plan. That section provides, in part, as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(3) the plan has been proposed in good faith and not by any means forbidden by law; . . .

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date . . .

Good faith is not defined in the Code and the legislative history is of no assistance. *See In re Levine,* 10 B.R. 168 (Bankr.D.Mass.1981). "As a result, the 'good faith' requirement has evolved into an elastic concept, dependent for the most part on the facts and circumstances of the particular case and the discretion of the court. In a 1987 decision, one court correctly noted that '[m]ore than 300 reported "good faith" decisions form a maze of rules and exceptions swallowing rules.'" *In re Martin,* 189 B.R. 619 (Bankr.D.Va.1995).

---

**7.** Present in the cases discussed was either the issue of the trustee being the sole beneficiary or the beneficiaries engaging in a business venture.

**8.** Although the Debtor did list an account receivable from a Richard Barker, it is not in the same

amount as the mortgage introduced into evidence.

**9.** I decline to address the issue of the Debtor's expenses. Although they appear incorrect, I have insufficient information to rule on the issue.

The majority of courts that have considered whether a plan has been filed in good faith use a "totality of circumstances test". *Pioneer Bank of Longmont v. Rasmussen (In re Rasmussen)*, 888 F.2d 703 (1989); *In re Corino*, 191 B.R. 283 (Bankr.N.D.N.Y. 1995); and *In re Martin, supra.* "The essence of the totality of circumstances test requires a determination of whether Debtor's conduct evinces a continuum of bad faith as it relates to the Chapter 13 Plan's proposal ... Thus, courts endorse a good faith inquiry broad in scope, ultimately converging on whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of the Code." *In re Corino*, 191 B.R. at 289.

In applying this test, courts apply a variety of factors which include: (1) the amount of payments under the plans; (2) the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt; (3) the motivation and sincerity of the debtor in seeking Chapter 13 relief; (4) whether the debtor has stated the debtor's debts and expenses accurately; (5) whether the debtor had made any fraudulent misrepresentation to mislead the bankruptcy court; (6) the type of debt sought to be discharged; (7) the duration of the plan; (8) the extent of preferential treatment of creditors; and (9) the debtor's pre-petition behavior. *See Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir.1987); *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983); and *In re Estus*, 695 F.2d 311 (8th Cir.1982). I believe that under this test or any other which could be applied, the Debtor has not demonstrated good faith in filing his plan.

In a state court proceeding where the Creditor was attempting to discover what assets of the Debtor could satisfy his judgment, the Debtor offered testimony about his assets which conflict with the Debtor's Schedules and the evidence adduced at the evidentiary hearing.[10] Judge Minehan found the Debtor's testimony so lacking in credibility that she ordered him incarcerated. It appears that the Debtor filed for bankruptcy to prevent the state court proceedings from going forward.

The Debtor filed a petition whose Schedules either omitted assets or grossly understated their actual value. The Debtor claimed an exemption in the IRA's although he was not entitled to such an exemption.[11] Although the Debtor amended his petition twice, he failed to correct theses defects.

The Debtor proposed a sixty month plan without providing the cause. 11 U.S.C. § 1322(c). The Debtor's plan provides for 100% payment to priority creditors and 10% to unsecured creditors. The Debtor's plan states that unsecured creditors would receive nothing if the case were converted to Chapter 7 because the Debtor has no interest in real estate or an automobile.

After the Creditor objected to the Plan, the Debtor had an opportunity to justify the Creditor's allegations. His representations at the evidentiary hearing, however, were vague and untruthful. His acquiescence with respect to his interest in the motor vehicle and the life insurance were, at best, untimely.

I believe that all of these facts, under any test of good faith, demonstrate that the Debtor's plan was proposed in anything but good faith. For this reason, I cannot confirm the Amended Plan as it does not meet the requirements of 11 U.S.C. § 1325(a)(3).

Because I do not have the actual value of the Property, I cannot make a finding of whether the creditor would be entitled to a greater distribution under Chapter 7. 11 U.S.C. § 1325(a)(4). Given the conclusions in this decision and the value the Creditor assigned to the Property in one of his pleadings, I believe that this may be the case.

IV.  Dismissal

11 U.S.C. § 1307 provides, in part, that

---

10. For example, in the state court proceeding on April 11, 1995, the Debtor stated that his IRA's were worth approximately $3,000. When he filed his petition on April 25, 1995, the Debtor listed their value at $13,388.

11. I am surprised that neither the Chapter 13 trustee nor the Creditor objected to the Debtor's objection. The Debtor is not entitled to an exemption in the IRA's pursuant to 11 U.S.C. § 522(d)(10)(E).

(c) ... the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditor and the estate, for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors; ...

In addition to the facts above which constitute ample grounds for dismissing the case for cause, I find that dismissal is warranted due to the unreasonable delay by the Debtor in this case. The Debtor has twice amended his Schedules and has yet to file ones that are accurate. The Debtor has filed an unconfirmable plan. The Debtor's account receivables are such that the Chapter 13 trustee must review them. These delays have prejudiced the creditors in that they have been unable to receive the total amounts which are due to them. Because of the delay in this case to date and the Debtor's abuse of the Code, I conclude that the case should not be converted but dismissed. An separate order to that effect will enter.[12]

12. Given this decision, I will not rule on any    motions pending in the case.