# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

---

## BAP No. MB 99-030

---

### IN RE: TOWN & COUNTRY CORPORATION,
Debtor.

---

### TOWN & COUNTRY CORPORATION,
Plaintiff-Appellant,

v.

### HARE & CO., CEDE & CO., JUSTINE CLARKE, PAUL GREGORY BURNINGHAM AND LORI BURNINGHAM STATE STREET BANK & TRUST CO., AND BOSTON EQUISERVE,
Defendants-Appellees.

---

**Appeal from the United States Bankruptcy Court
for the District of Massachusetts
(Hon. William C. Hillman, U.S. Bankruptcy Judge)**

---

**Before
Votolato, Lamoutte, Vaughn, U.S. Bankruptcy Judges**

---

**Daniel C. Cohn, David B. Madoff and Cohn & Kelakos LLP, for the Appellant.**

**Domenic P. Aiello, Alicia M. Duff and Lyne, Woodworth & Evarts LLP, for the Appellee Hare & Co.**

---

**July 10, 2000**

---

**Vaughn, J.**

Town & Country Corporation ("Town & Country" or "Appellant"), the debtor in this Chapter 11 Bankruptcy Proceeding, appeals from an order by the bankruptcy court granting summary judgment in favor of defendants Hare & Co. et al. on its complaint seeking subordination of claims and for other relief pursuant to 11 U.S.C. § 510(c). For the reasons set for below, the bankruptcy court's order is affirmed.

## APPELLATE JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 158(a) and (c), and Rule 8001-1(d)(1) of the Local Rules for the Bankruptcy Appellate Panel for the First Circuit. 28 U.S.C. §§ 158(a) and (c) (1988 & Supp. 1998); 1ST CIR. B.A.P. R. 8001-1(d)(1) (1998). The parties, pursuant to Rule 8001-1, have not elected to have their appeal heard by the District Court for the District of Massachusetts. 1ST CIR. B.A.P. R. 8001-1(d)(1). Further, this proceeding constitutes a separate proceeding within the context of the Debtor's bankruptcy case, and thus is appropriate for review. Smith v. Seaside Lanes (In re Moody), 825 F.2d 81, 85 (5th Cir. 1987).

## BACKGROUND

Town & Country is a holding company involved, through its subsidiaries, in the manufacturing and marketing of jewelry. At the time it voluntarily filed for bankruptcy protection, Town & Country was publicly traded on the American Stock Exchange. Defendants Hare & Co., Cede & Co., Justine Clarke, Paul Gregory Burningham and Lori Burningham are holders of Exchangeable Preferred Stock of Town & Country. Defendant State Street Bank is the successor trustee under a trust agreement created to hold certain shares of stock for the benefit of holders of the Exchangeable Preferred Stock. Defendant Boston Equiserve is the transfer agent for the stock held by the trustee State Street Bank.

In 1993, Hare & Co. was the holder of notes issued by Town & Country that were in default after Town & Country failed to make interest payments. As part of a financial restructuring Town & Country established and issued shares of Exchangeable Preferred Stock, which were exchanged for the notes. Hare & Co., as well as Defendants Cede & Co, Clarke and the Burninghams, are the holders of all shares of the Exchangeable Preferred Stock.

In order to insure the performance of Town & Country under the arrangement, Town & Country created a trust (the "Little Switzerland Trust") in which it placed shares of Little Switzerland, Inc. common stock equal in number to the outstanding

3

shares of Exchangeable Preferred Stock. Under the terms of the arrangement, the trust was created "solely for the benefit of the Holders of the Exchangeable Preferred Stock and the Corporation in order to give the Holder a free and unfettered opportunity (including, in the event the Corporation is in bankruptcy) to exchange such shares of Exchangeable Preferred Stock for Little Switzerland Common Stock . . . and to secure the performance of the Corporation's obligations under the terms of this Certificate of Designation." App. at 63-64. The Certificate of Designation orders the trustee to hold the shares solely for the benefit of the holders of the Exchangeable Preferred Stock and Town & Country. The trust is irrevokable.

Pursuant to the Certificate of Designation, holders of the Exchangeable Preferred Stock were entitled to receive a dividend beginning on the second anniversary of the stock's issuance. In addition, a mandatory redemption was established requiring Town & Country to redeem all outstanding shares of the Exchangeable Preferred Stock on December 31, 2000 for $14.59 per share (the "Liquidation Value"). The redemption price could be paid in cash or in shares of Little Switzerland stock. In addition, Town & Country could elect for an optional redemption which allows the corporation, after the second anniversary of their issuance, to redeem the shares for a cash price set as a percentage of the Liquidation Value; if during the period before the second

4

anniversary the sale price of the Little Switzerland stock rose to $18.75 per share, Town & Country could redeem the Exchangeable Preferred Stock, in whole, for the Liquidation Value.

After March 1, 1994, holders of the Exchangeable Preferred Stock were given the right to exchange each share for one share of the Little Switzerland Stock, subject to certain adjustments.[1]

---

[1]The applicable characteristics of the Exchangeable Preferred Stock, as stated by the Bankruptcy Court, were as follows:

> Each share of Exchangeable Preferred Stock will have a liquidation preference of $14.59, plus accrued and unpaid dividends (the "Liquidation Value"). . . . The Exchangeable Preferred Stock will be senior to all Junior Stock (as defined) . . . and will be subordinate in right of payment to all indebtedness of the Company....
>
> No dividends will be paid on the Exchangeable Preferred Stock until after the second anniversary (the "Second Anniversary Date") of the date on which shares of Exchangeable Preferred Stock are issued (the "Issuance Date"). Thereafter, holders of the shares of Exchangeable Preferred Stock will be entitled to receive, when and as declared by the Board of Directors of the Company, cumulative cash dividends at the rate of 6% per annum of the Liquidation Value thereof. . . . The amount of accrued and unpaid dividends shall be added to the Liquidation Value thereof. . . . The amount of accrued and unpaid dividends shall be added to the Liquidation Value. If and whenever two semi-annual dividend payments on the Exchangeable Preferred Stock are in arrears, then during the period commencing with such time and ending when all arrearages in dividends on the Exchangeable Preferred Stock shall have been paid (hereinafter called the "Class Voting Period"), the holders of the Exchangeable Preferred Stock . . . will be entitled to elect one or more additional directors equal to 30% of the entire Board of Directors of the Company. . . .

5

On November 17, 1997, Town & Country filed for relief under Chapter 11 of the Bankruptcy Code. As part of its confirmed plan of reorganization, all proceeds realized from preferential and

---

Except as set forth below, the Company may not redeem the Exchangeable Preferred Stock until the Second Anniversary Date. Thereafter, the Company may redeem the Exchangeable Preferred Stock, in whole at any time or in part from time to time, at a price equal to 100% of Liquidation Value, if redeemed during the twelve month period beginning on the Second Anniversary Date, and thereafter at prices declining annually to 100% of principal amount on or after the fifth anniversary of the Issuance Date. The Company is required to redeem the Exchangeable Preferred Stock on December 31,2000 at a price per share equal to the Liquidation Value thereof ("the Mandatory Redemption"). Notwithstanding the foregoing, in the event that during the period from the date of issuance until the Second Anniversary Date, the Closing Sale Price (as defined)for a share of common stock of Little Switzerland, Inc. ("Little Switzerland") equals or exceeds $18.75 per share for 30 consecutive trading days, the Company may redeem the Exchangeable Preferred Stock in whole at a price per share equal to 100% of the Liquidation Value (a "Company Optional Redemption"). In the case of a Mandatory Redemption, the Company may pay any redemption price by delivering cash, shares of common stock of Little Switzerland (the "Little Switzerland Common Stock"), other Exchange Property (as defined), or other combination thereof. In all other cases, the Company shall pay the redemption price by delivering cash. . . .

Upon (i) a Change of Control of the Company (as defined), (ii) a Change of Control of Little Switzerland (as defined), (iii) the voluntary or involuntary bankruptcy of the Company, (iv) upon receipt of a notice of a Company Optional Redemption, or (v) in any event after March 1, 1994, each holder of a share of Exchangeable Preferred Stock may exchange such share for one share of common stock of Little Switzerland (the "Exchange Rate").

App. at 210-11.

fraudulent transfer actions are to be distributed to the general unsecured creditors. After Hare & Co. sought to exercise its rights of exchange under the Certificate of Designation following Town & Country's bankruptcy petition, Town & Country brought the underlying action to subordinate the claims of the holders of the Exchangeable Preferred Stock and to turn over the security interest securing the claims. Hare & Co. agreed to a temporary injunction enjoining the exchange pending a determination by the bankruptcy court.

Count I of the complaint characterizes Town & Country's arrangement with the holders of the Exchangeable Preferred Stock as a stock redemption agreement. Therefore, contends Town & Country, the rights of the holders may be subordinated to the claims of general unsecured creditors pursuant to 11 U.S.C. 510(c). Count II seeks an injunction and declaratory judgment that the exchange of Exchangeable Preferred Stock for the Little Switzerland Stock is a distribution by Town & Country to a stockholder while the corporation is insolvent, and thus unlawful under Massachusetts law. Count III asks the court to declare the trust an unlawful self-settled trust.

The court below granted summary judgment in favor of the Defendants.[2] The court's decision turned on whether the holders of

---

[2] Motions for summary judgment were brought by Town & Country and Hare & Co. only. However, following a status conference, is was agreed that the judgment should be granted in

the Exchangeable Preferred Stock are holders of a claim against the bankruptcy estate or an equity interest. The court found that the Exchangeable Preferred Stock is in the nature of an equity interest. The court then found that the plain language of 11 U.S.C. § 510(c) makes the provision inapplicable to this case as it allows the court to subordinate claims to other claims and interests to other interests, but does not allow the court to subordinate an interest to a claim. As to Counts II and III, the court found that Massachusetts law does not forbid the transactions.

**STANDARD OF REVIEW**

The Bankruptcy Appellate Panel reviews a bankruptcy court's grant of summary judgment de novo. Cumberland Farms, Inc., v. Florida Department of Environmental Protection, 116 F.3d 16, 18 (1st Cir. 1997); Adams Co-Operative Bank v. Greenberg (In re Greenberg), 229 B.R. 544, 545 (B.A.P. 1st. Cir. 1999). Rule 56 of the Federal Rules of Civil Procedure, as made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Both

---

favor of all defendants.

parties moved for summary judgment, and agree that no material facts are in dispute.

**DISCUSSION**

I.  Application of Section 510(c).

Town & Country's principal argument is that the Certificate of Designation and the agreement between Town & Country and the holders of the Exchangeable Preferred Stock is a stock redemption agreement, by which the holders are given the right to require Town & Country to redeem their shares of Exchangeable Preferred Stock for shares of the Little Switzerland Stock held in the Little Switzerland Trust.  Town & Country argues that because the right of redemption is a claim against the bankruptcy estate, it should be subordinated pursuant to § 510(c) of the Bankruptcy Code.  On the other hand, the holders argue that they do not hold redemption rights, but simply a right to exchange their Exchangeable Preferred Stock for shares of Little Switzerland Stock.  They claim that because the Little Switzerland Stock is held in an irrevokable trust and is not part of the Town & Country estate, they do not hold a claim against the estate, and therefore, § 510(c) is inapplicable.

The Panel agrees with the court below that the Little Switzerland Stock is not property of the estate.  It further agrees that the holders of the Exchangeable Preferred Stock hold an equity

9

interest rather than a claim against the Town & Country bankruptcy estate.

Section 510(c) of the bankruptcy code provides:

Notwithstanding subsections (a) and (b) of the section, after notice and hearing, the court may –

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such subordinated claim be transferred to the estate.

11 U.S.C. § 510(c).

The starting point for a bankruptcy court in determining the application of § 510(c) is determining whether a party holds a claim against the estate or an equity interest in the nature of a capital contribution.  See Diasonics Inc., v. Ingalls, 121 B.R. 626, 630 (Bankr.N.D.Fla.1990).  Where a party holds an equity interest, then the interest, by its nature, is subordinated and the court need not reach the issue of whether to equitably subordinate, since "the essential nature of a capital interest is a fund contributed to meet the obligations of a business and which is to be repaid only after all other obligations have been satisfied." Id. (quoting Herzog and Zweibel, The Equitable Subordination of Claims in Bankruptcy, 15 Vand.L.R. 83 (1961)).  See also Central Cooperatives, Inc. v. Irwin (In re Colonial Poultry Farms), 177 B.R. 291, 299 (Bankr.W.D.Mo. 1995)(quoting same).

10

The Panel agrees with the bankruptcy court that the holders of the Exchangeable Preferred Stock hold an interest rather than a claim against the estate. Town & Country's argument is based on the contention that the holders were exercising their rights of redemption when they attempted to exchange their Exchangeable Preferred Stock for the Little Switzerland Stock, and that the right of redemption created a claim against the estate. However, in order to find that the transaction was a redemption, the Panel must first find that the shares of Little Switzerland Stock held in the Little Switzerland Trust are part of the bankruptcy estate. Like the court below, we find that the shares of Little Switzerland Stock held by the Little Switzerland Trust are not property of the estate.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of property that comes within this definition is necessarily broad as it serves the basic framework of the bankruptcy system: to create a bankruptcy estate that is subject to the jurisdiction of the bankruptcy court which can in turn effectuate a fresh start for the debtor and create a systematic distribution for creditors according to their relative priority as defined by the Bankruptcy Code. However, despite the broad definition of "property of the estate" the Bankruptcy Code does not vest the bankruptcy estate with any more rights in

11

property than the debtor held prior to the filing of the petition. See, L. King, 5 Collier on Bankruptcy, ¶ 541.11 (15th Ed. Rev. 2000).

What is and what is not property of the estate is a question of federal law, however courts look to the applicable state law to determine the debtor's equitable and legal interests in property. Marrs-Winn Company v. Giberson Electric, Inc. (In re Marrs-Winn Company), 103 F.3d 584, 591 (7th Cir. 1996). An express trust "creates a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement (Second) of Trusts § 2 (1959). There is no question that an express trust was created in this case, placing title in the hands of a third party trustee for the benefit of the stockholders and Town & Country. However, because the bankruptcy estate can establish no greater rights to the corpus of the trust than was held by Town & Country at the commencement of the case, the question becomes what interest does Town & Country have in the trust?

In determining whether Town & Country is the true owner of the trust property, and thus the Little Switzerland Stock is property of the estate, we find guidance in the approach taken by the district court in In re Medalion Realty Trust, 120 B.R. 245

12

(D.Mass.1990).  In that case the court endeavored to determine whether an entity ostensibly a business trust was in reality a partnership.  The court looked to the discretion and control of the beneficiary of the trust, holding  that the more power the beneficiary of the trust holds and exercises over the affairs of the entity the more likely it is that the business trust is a partnership. Id. at 248.  The approach taken by the court in Medallion has been applied by bankruptcy courts in determining whether trust property is property of the estate under section 541 of the Bankruptcy Code.  See In re Simon, 179 B.R. 1, 5 (Bankr.D.Mass.1995); In re Eastmere Development Corp., 150 B.R. 495, 500 (Bankr.D.Mass.1993).

Applying this approach to the Little Switzerland Trust, we find that the legal title to the subject shares of Little Switzerland Stock is held by the trustee, and the trustee is forbidden from transferring any of the shares except as expressly set out in the agreement.  Id. at 95, 96.  The trust agreement further provides that the only manner in which Town & Country can regain title to the shares is if it redeems or otherwise acquires all of the outstanding shares of the Exchangeable Preferred Stock. Id. at 99. Finally, the trust is irrevokable. Id. at 95.

The terms of the trust agreement and the Certificate of Designation make clear that Town & Country exercises little if any control over the Little Switzerland Stock.  As described earlier,

13

Town & Country's only discretionary power over the Little Switzerland Stock is an option to order the trustee to use the stock to pay the holders the Exchangeable Preferred Stock under either the optional or mandatory redemption provisions set out under the Certificate of Designation.

Moreover, the trust fails to meet the definition of a nominee trust, under which courts have held that the beneficiaries are the true owners of the trust property. See In re Rosencranz, 193 B.R. 629,635 (Bankr.D.Mass.1996); In re Eastmare Development, 150 B.R. at 503. Under a nominee trust, the trustee exercises little or no control over the trust assets, but acts at the direction of the beneficiaries.[3]  Instead, as we have noted, the Trustee of the Little Switzerland Trust holds the stock for the primary benefit of the holders of the Exchangeable Preferred Stock, and is permitted by the terms of the trust agreement and the Certificate of

---

[3] The features of a nominee trust are as follows: (1) the names of the beneficiaries are filed with the trustees rather than being publicly disclosed; (2) a trustee may serve simultaneously as a beneficiary; (3) the trustees lack power to deal with their trust property except as directed by the beneficiaries; (4) a third party may rely on the disposition of trust property pursuant to any instrument signed by the trustee, without having to inquire as to whether the terms of the trust have been complied with; and (5) the beneficiaries may terminate the trust at any time, thereby receiving legal title to the trust property as tenants in common in proportion to their beneficial interest.

In re Grand Jury Subpoena, 973 F.2d 45,48 (1st Cir. 1992).

14

Designation to dispose of the stock only upon the holders' election to exchange their shares of Exchangeable Preferred Stock or upon one of the redemption events specified. Thus, we find that Town & Country's lack of discretion or control over the Little Switzerland Stock supports the bankruptcy court's finding that it is not property of the bankruptcy estate.

Because we find that the Little Switzerland Stock is not property of the bankruptcy estate, we hold that the holders of the Exchangeable Preferred Stock do not hold a claim in the form of redemption rights against Town & Country, but rather an equity interest. We agree with Town & Country that an equity interest is subordinate to claims. However, it is important to note that the interest represented by the Exchangeable Preferred Stock is not extinguished. Rather, upon exchange it will be in the hands of the trustee, where it will remain subordinate to claims. Because the property for which the Exchangeable Preferred Stock will be exchanged is not property of the estate, there will be no effect on the bankruptcy distribution scheme.

Furthermore, we find nothing in the language of § 510(c), or any other provision of the Bankruptcy Code, which would prevent the holders of the Exchangeable Preferred Stock from exercising their rights of exchange for property that is not property of the estate. Rather, § 510(c) is designed simply to deal with equitable subordination of claims to other claims or interests to other

15

interests. It's language does not extend to treatment of interests vis a vis claims because, as discussed supra, equity interests are already subordinate to claims. However, the fact that equity interests are subordinate to claims does not alter the result here as the equity interest will still remain, just in the hands of the trustee.

The Panel will not import some other interpretation to §510(c) when its language is clear and unambiguous on its face. It is "a fundamental canon that statutory interpretation begins with the language of the statute itself." Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552, 557-58 (1990). The Appellant has presented no authority to suggest that the statute should or can be interpreted in any manner other than how it plainly reads. In fact, the legislative history suggests the Congress was cognizant of the separate treatment of claims and interests: "After notice and a hearing, the court may, under principles of equitable subordination, subordinate for the purposes of distribution all or part of an allowed claim to all or part of another allowed claim *or* all or part of an allowed interest to all or part of another allowed interest. As a matter of equity, it is reasonable that a court subordinate claims to claims *and* interests to interests." 124 Cong. Rec. H 11,095 (Sept. 28, 1978; S 17,412 (Oct. 6, 1978)(emphasis added).

The creation of the trust and the exchange rights may well

16

have been the fruits of careful bankruptcy planning. However, this does not alter our conclusion that the property held by the Little Switzerland Trust is not property of the estate, and thus the holders of the Exchangeable Preferred Stock do not hold claims, in the form of redemption rights, which may be subordinated to the claims of unsecured creditors.

II. Voidness of the Little Switzerland Trust.

Town & Country also argues that the Little Switzerland Trust is void under Massachusetts law as a self-settled trust. Town & Country relies on Merchants National Bank of New Bedford v. Morrissey, 109 N.E.2d 821 (Mass. 1953), which stated that a self-settled trust is void against creditors of the settlor. Id. at 823. Town & Country asks this panel to extend Merchants National Bank, which involved an individual who transferred assets to a spendthrift trust for his own benefit, to a corporation which places assets in trust for the benefit of its shareholders. Like the court below, we reject this argument.

We agree with Town & Country that the rule in Massachusetts is that a settlor who establishes a trust for the settlor's own benefit and reserves the ability to amend, revoke or invade the corpus of the trust cannot protect the trust from the reach of creditors. See Aylward v. Landry (In re Landry), 226 B.R. 507, 510(Bankr.D.Mass.1998); In re Rosencranz, 193 B.R. 629, 633

17

(Bankr.D.Mass.1996); In re Kellogg, 179 B.R. 379, 389(Bankr.D.Mass.1995). However, the Little Switzerland Trust, which was created by Town & Country, was not created for the sole benefit of the corporation, but rather was created for the benefit of the holders of the Exchangeable Preferred Stock. The bankruptcy court held that to find that the Little Switzerland Trust was a self-settled trust would require the court to pierce the corporate veil, that is, find that there was no distinction between the stockholders and the corporation. We agree with the bankruptcy court.

Town & Country offers no authority for the proposition that we should refuse to recognize a distinction between the corporation and the stockholders. To treat the corporation and the shareholders as one, as Town & Country proposes, would be to ignore one of the central tenets of corporate law: the corporate entity is separate and distinct from its shareholders. See Spaneas v. Travelers Indemnity Company, 668 N.E.2d 325, 326 (Mass.1996); Zora v. State Ethics Commission, 615 N.E.2d 180, 186 (Mass.1993); In re Plantation Realty Trust, 232 B.R. 279, 282 (Bankr.D.Mass.1999). Without piercing the corporate veil and finding that the distinction between the stockholders and the corporation should be disregarded, we can find no justification for finding the Little Switzerland Trust is a self-settled trust.

III.  Violation of Massachusetts Corporate Law.

The final argument of Town & Country is that the exchange constitutes an unlawful stock redemption in violation of the Massachusetts statute forbidding corporations from making distributions while the corporation is insolvent.  Mass. Gen. Laws ch. 156B, §45.  However, to find that the exchange was an improper distribution would require us to find that the exchange was a stock redemption.  We have already determined that the exchange does not constitute a stock redemption.  Therefore, this argument fails as well.

**CONCLUSION**

The Panel finds that because the Little Switzerland Stock is not property of the bankruptcy estate the holders of the Exchangeable Preferred Stock do not hold a claim against the estate, but an equity interest.  Section 510(c) of the Bankruptcy Code cannot be utilized to prevent the holders of this Exchangeable Preferred Stock from exchanging this interest for property that is not property of the estate.  Furthermore, the Little Switzerland Trust is not void as a self-settled trust, and the exchange rights of the holder of the Exchangeable Preferred Stock do not violate Massachusetts law.  Accordingly, the judgment of the bankruptcy court is affirmed.

19